Washington,
 
 J.
 

 delivered the opinion of the Court as follows:
 

 The only question for the consideration of this Court’ is, whether the Court below had jurisdiction of this cause for the purpose of restoring the property to the Libellant ? The jurisdiction is asserted upon two grounds.
 

 1. That the force of the privateer, by means whereof this capture was made, had been increased at New Orleans, contrary to the laws and in violation of the neutrality of the United States.
 

 2. That the commission of this privateer bad expired before the capture was made.
 

 As this Court is satisfied witij the sentence of the Court below upon the first ground of jurisdiction, the opinion will be confined to that point. The general rule is undeniable, that the trial of captures made on the high seas,
 
 jure belli,
 
 by a duly commissioned vessel of war, whether from an enemy or a neutral, belongs exclusively to the Courts of that nation to which the captor belongs. To this rule there are exceptions which are as fi rmly established as the rule itself. If the capture be made within the territorial limits of a neutral country Into which the prize is brought, or by a privateer which had been illegally equipped in such neutral country, the prize Courts of such neutral country not only possess the power, but it is their duty
 
 £o
 
 restore the property so illegally captured to the owner. This is necessary to the vindication of their own neutrality.
 

 
 *365
 
 A neutral nation may, if so disposed, without a breach of hermeutralcharacter, grant permission to both belligerents to equip their vessels of war within her territory. But without such permission the subjects of such belligerent powers have no right to equip vessels of war, or to increase or augment their force, either with arms or with men, within the territory of such neutral, nation. Such unauthorized acts violate her sovereignty and her rights as a neiitral. All captures made by means of such equipments are illegal in relation to such nation, and it is. competent to her Courts to punish the offenders, and, in case the prizes taken by her are brought
 
 infra
 
 jircesidia, to order them to be restored.
 

 These principles are believed to be fully warranted by the general law of nations, by the decisions of the Courts of this country, and by tlie laws of the 'United States. By the act of June, 1794, the enlisting, within the territory of the U. States, persons to serve as soldiers andinarines on board of any vessel of war or privateer in the service of any foreign state, with the exception of the subjects of such foreign state transiently within the United States; the fitting,out and arming any vessel in the service of a foreign prince or state at war with any other nation which is at peace with the United States ; anil the increasing or, augmenting the force of any armed vessel of war in such foreign service, by adding to the number of her guns, and thelike; are declared to be offences against the United States, and are punishable by fine and imprisonment; and the 7th section of the law provides for the detention of all such vessels as have been so fitted out, or as have so increased or augmented their force, together with such prizes as they may have made, in order to the execution of the prohibitions and penalties prescribed by that act, and to the restoring of such prizes in cases where restoration shall have been adjudged. '
 

 Thus, if there were any doubt as to the l’ule of the law of nations upon this subject, the illegality of equipping a foreign vessel of war withih the. territory of the United States, is declared by the above law; and the power and duty of the proper Courts of the United States, to restore thn prizes fnade in violation of that law, is clearly recognized*
 

 
 *366
 
 But it is insisted far the claimant in this case, that th« persons taken on board at New Orleans by the captain of the privateer, formed no part of the crew at the time the privateer left that port, but that they were received merely as passengers; that they were emigrants from other nations, and not citizens of the United States; and that their subsequent changeof character from passengers to crew, cannot attach any crjme to the captain of the privateer under the laws of the United States, or affect his right to the prizes which he might afterwards make on the high seas.
 

 TTliis argument is unsupported by the facts proved in the cause. It appears that capt. Batigne proposed, in the first instance to the collector of the port of New Orleans, to take on board ten passengers for France, provided he should be permitted to do so, and that he after-wards stated to the collector that as there was some difficulty in obtaining such permission he should decline taking them. But what places this subject beyond all doubt is, that it appears from some of the ship’s papers of the privateer that advances were made to these alleged passengers with a deduction of 3 per cent, for the marine invalids agreeably to the órdinances of France, and the
 
 role d? equipage
 
 contains the number of prize shares .opposite to their names. These facts, being unexplained by any testimony in the cause which deserves to be respected, leave no doubt that the persons taken on board at New Orleans were engaged originally as an addition to the crew of the privateer. Some of the persons so enlisted are proved to be native citizens*; others were residents domiciled in New Orleans, some with and others without families; and others again were slaves belonging to the citizens of thatplace, who appear.to liave, been seduced from the- service of their masters. It iá quite immaterial whether the persons so enlisted were native American citizens or foreigners domiciled within the United States; since neither the law of- nations nor the act of congress recognizes any distinction except in respect to subjects of the state,in whose service they are so enlisted, transiently within the United States ; and it may well be doubted whether this exception in the act of congress was not virtually repealed by the non-intercourse law. But it appears that some of these per»
 
 *367
 
 sons were emigrants from Cuba, and were, at that time} residing and domiciled in New Orleans.
 

 It is next contended on helialf of the Claimant, that, in case the Court should affirm the decree directing restitution, it ought to be done upon the condition of the Libellant paying salvage, not to the captain of the gunboat who furnished the Alerta with provisions and conducted her to New Orleans, but to the privateer.
 

 This claim is entirely inadmissible.. Salvage is allowed as a reward for the meritorious conduct of the salvor, and in consideration of a benefit conferred on the person whose property he has paved. What are the pretensions of captain Batigne to the reward lie claims ? He fits out his vessel at New Orleans in contravention of the law of nations dnd of the United States 5. and finding on the hi^h seas a vessel and cargo,, belonging
 
 to
 
 the subjects of anation at peace with the United'States, within a short distance of the Havanna, her port óf destination, he employs the force thus illegally taken on board to make prize of both vessel and cargo, and taking her out of her course, lie conducts lier towards the Balize, near to' which she is found by captain Alien in distress in consequence óf a severe gale, to which she had been exposed, and of the want of provisions. Her wants being-relieved by that officer, lie conducted her in safety to New Orleans. Nothing could bq more remote from the intentions of the captain of the privateer than to render a service to this ship and her cargo.. So far froffi it, he committed an unwarrantable spoliation of the cargo by selling fourteen of the slaves, part thereof, to an. American whom he met at sea 5 and. he most certainly intended ,to have smuggled the residue of the slaves into Grand Terre pr some, other part of the Coast, and there to have disposed of them. It would ill become any’Court of justice, and much less an American Court, to bestow a reward on a person who had’ thus violated the laws of the .United ,States in one instance, and meditated a violation of them j»";,another -: and it would be still worse to give such reward at the expense of the injured Spaniard.
 

 Upon the whole, it is the opinion of this Court that 4he sentence appealed from ought to be affirmed with GOStS.