## Case No. 17,477.

### WHALEN v. The SILVER SPRING.

[32 Hunt, Mer. Mag. 711.]

District Court, D. Massachusetts. March Term, 1854.

SEAMEN'S WAGES—FISHING VOYAGE—AUTHORITY OF MASTER—FRAUDULENT SHIPPING ARTICLES.

[The master of a vessel prepared by her owners for a fishing voyage, with intent to secure the bounty, has no implied authority to engage seamen for wages merely, instead of upon shares, as required by the statute of June 19, 1813 (3 Stat. 2).]

This was a proceeding in rem instituted by the libelants to recover wages as fishermen on board the Silver Spring, during the last season.

SPRAGUE, District Judge. It is quite clear, I think, that this vessel was designed for a fishing voyage in the season of 1853, and that the owners contemplated the voyage so conducted as to secure the bounty, or allowance as it is called in the statute, provided by law. Certain preliminary steps requisite for this purpose were taken at Harwich, where the vessel was, and where the owners lived. The owners provided a fisherman's paper or agreement, which was there signed by the captain and three men. And the vessel was inspected, and the certificate, which is one requisite for obtaining the bounty, issued, the number of the crew being left blank, trusting to the honor of the master to ship them properly. The vessel left Harwich to come to Boston to complete her crew, the owners having provided the proper fishing paper. And the master here hired the

libelants on wages. They subsequently signed the articles which had been brought from Harwich. Had the owners at the time of the signing of the agreement by the libelants, or at any time prior to receiving the agreement, any knowledge that the libelants were hired on wages? I think not. Had the master any previous authority to hire men on wages? There is no evidence of any express authority. The inquiry is therefore whether he has any implied authority as master. I think the master has no implied authority in a fishing voyage to hire men on wages, first, because the owners cannot obtain the bounty if the men are hired at monthly wages, and, second, because the requirement of the law of June 19, 1813, is positive and unequivocal, that the master of every fishing vessel of more than twenty tons shall, before proceedceeding on his voyage, make an agreement in writing, for shares, with every fisherman employed therein. By this law the agreement is to be made with the master, and it is the master's duty to have the articles signed. And the presumption is, that he had no authority other than that given him by law, and in conformity to the requirements of the law.

Subsequently to the agreement actually made, the vessel did not return to Harwich, till after the end of her voyage or fare. But the master, before sailing from Boston, sent the owners the shipping articles properly signed and filled up. There is no evidence of any other communication to the owners at that time—nothing to show that the owners had any knowledge at that time that the crew were hired on monthly wages. At the end of the first voyage the vessel returned to Harwich, and certain payments were made to the libelants. Do these payments bring home to the owners the knowledge that the men were actually engaged on wages? It does not appear that the payments were made to the men by the owners. And nothing is more common, when men are engaged on shares, as in whaling voyages, for the master or owner to advance them money. deducting it from the amount due, when the final settlement is made. Here the men received certain sums of money, but this does not show that the owners knew the men were engaged on wages. One man, John Ryan, left by permission of the master at the end of this voyage. He received a certain sum of money as the amount due him. It does not appear that he was paid by the owners, nor does it follow, because he received a sum of money as a settlement of his agreement, that the owners knew he received it as monthly wages. They may have known it. But there is no evidence before the court to determine this. There is no evidence that the owners then had any knowledge that the men were hired at monthly wages, or that they did not suppose them to be on shares. There is no doubt, I think, that the master agreed that these men should have monthly wages. He was willing to pay them on the return from the second voyage, but he had no money.

It is said that the libelants were induced to sign the written agreement by fraud and deception. They are their own witnesses. And what is their story? That after the master had agreed with them for wages, he told them to sign the articles in order that the owners might get the bounty. The articles were read over to the libelants. They are both familiar with the practice in fishing voyages. One probably knew something of the requirements of the law, for he at first refused to sign the articles until assured the only object of them was to get the bounty, and at the end of the second voyage, when a dispute arose, he told the owners that they had only three shares-men; and not three-fourths American citizens on board. Now it stands thus—these persons, having agreed with the master for monthly wages, signed the articles in order to enable the master to commit a fraud in obtaining the bounty—a fraud upon the owners and upon the government—a fraud which must at least deprive the owners of the right to claim the bounty, or to retain it if paid. And yet these persons seek now, by a proceeding against the vessel, to render her liable for monthly wages according to their agreement with the master. The court of admiralty goes far to enforce a seaman's contract for wages; but never so far, I think, as to uphold him in committing a fraud. Shall the court allow the libelants to say that they are not bound by the written contract, because it was only signed to get the bounty—when they signed it with their eyes open? I am not now called upon to decide whether the libelants can enforce the written agreement, or whether this is so tainted with fraud that a court will not enforce it. But for the reasons already given the libel must be dismissed, though, as the parties were led into the transaction by the fraud of the master, without costs.