## BYRNE v. JOHNSON et al.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1893.)

### No. 49.

1. SALVAGE SERVICES—WHAT ARE—COMPENSATION—MISCONDUCT.

The steamer E., of 2,500 tons, struck a concealed rock near the Bahama bank, and sprung a leak, which made it necessary to run her aground about 10 miles from Great Isaac's lighthouse. In order to lighten ship the master sent to Key West, and obtained the schooner Cora, with a crew of 22 men. She worked for five days, but her appliances and the methods of her crew were crude, and her diver failed to discover the largest leak. At the end of that time other salvors arrived, with a competent crew and efficient apparatus, who soon stopped the leak, and got the E. off, and towed her to a sheltered place, where her cargo was transferred to the steamer New York, sent out by her owners for that purpose. In the mean time the Cora, with a portion of the E.'s cargo, which she had on board, returned to Key West, against the protest of E.'s master; her reasons for so doing being fear of a hurricane, and a broken rudder, which the officers of the E. offered to repair. At Key West the cargo was libeled for salvage. *Held*, that the Cora's services were of doubtful value, and, in view of the fact that she unnecessarily carried part of the cargo to a place where it would not sell to advantage, the service was one for which the compensation should be pro labore et opere, and not for salvage services. 50 Fed. Rep. 951, reversed.

2. SAME—COMPENSATION.

Libelants having been already compensated for their services, as respects the E. herself, through a decree of another district court, their services in respect to the cargo which was carried to Key West by them should be compensated at the rate of $25 for each of the crew, and $550 for the Cora, which was valued at $3,500. 50 Fed. Rep. 951, reversed.

Appeal from the District Court of the United States for the Southern District of Florida.

In Admiralty. Libel by B. W. Johnson and others against a portion of the cargo of the steamer Eldorado (Henry J. Byrne, claimant) to recover for salvage services. The district court held that the service rendered was a salvage service, and awarded 25 per cent. of the value of the cargo saved as compensation. See 50 Fed. Rep. 951. The claimant appealed. Reversed.

J. P. Blair, (G. Bowne Patterson, on the brief,) for appellant.
Jefferson B. Browne, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BILLINGS, District Judge.

BILLINGS, District Judge. This suit was a suit for salvage brought by the master of the schooner Cora, for himself, the crew and the owners of the schooner, for services rendered in saving a portion of the cargo of the steamship Eldorado. The Eldorado, on August 4, 1891, while proceeding from New York to New Orleans, being a vessel of 2,500 tons, struck a concealed rock near the Bahama bank, which caused her to spring a leak, so that it became necessary to run her aground. She was grounded successfully upon a bank about 10 miles from Great Isaac's lighthouse. The master desired to lighten the ship by taking out the cargo, and, having employed without success several crews from North Bimini, sent to Key West the mate, who obtained the revenue cutter McLean and the schooner Cora. The latter was brought by the former alongside the disabled steamship Eldorado. The Cora, with her pumps, diver, and crew, worked from the 9th to the 14th of August, but did not stop the leaks, nor permanently lower the water in the Eldorado to any great degree.

Meanwhile, on the 14th of August, the Merrit Wrecking Company arrived, and, with their complement of men and apparatus, got her in such a situation that on the 18th she was towed by the steamer New York to a sheltered place, and on the 25th of August proceeded towards Hampton Roads. On the 16th of August the large steamer New York, sent out by the owners of the Eldorado to receive her cargo, arrived and received it. The original object of the master in having the Cora brought out from Key West was to stop the leaks of the Eldorado, and get her off the reef, by lightening her of her cargo, and, after she was sufficiently unladen to enable him to get her off, to replace in her the cargo. This object was changed to the purpose to reload the unladen cargo of the Eldorado on board the New York after the arrival of the latter. On the 16th of August the Cora, against the wishes of the master of the Eldorado, instead of transferring that portion of the Eldorado's cargo which she had on board onto the New York, took it to Key West, where it was libeled. The reason which led the master of the Cora to take the schooner and her cargo back to Key West was fears of hurricanes, and a broken rudder, which the officers of the Eldorado offered to repair.

Two facts are impressed upon our minds by a study of this case:

First. It is doubtful whether the services of the Cora would, in any event, have been of much value to the Eldorado and cargo. The appliances and methods of the improvised crew seem to have been crude. Their diver had failed to discover the large leak which existed, and was discovered when the diver from New York arrived. This failure made their services to stop the leak of little effect. On the whole it is not, from all the testimony, a case of clear, undoubted contribution to the saving of property.

Secondly. The withdrawal of the Cora from the Eldorado, and her taking a portion of the cargo to Key West, against the wishes and to the detriment of the owners of the salved property, is a serious feature of the case. Undoubtedly, salvors, as a general proposition, are entitled to the possession of the property which has been salved.

But this right might have been exercised by putting the unloaded portion of the cargo of the Eldorado onto the New York, and having one of the salvors accompany it to New York. The frustration of the voyage to the owners and shippers was made more injurious by this separation of the cargo, and the sale of it in a port distant from its destination.

The lien of salvors is not dependent, as are common-law liens, upon possession. With reference to retaining possession, as in all his other movements with reference to the salved property, the salvor must act in the interest of, so to speak, the whole property. Even if he parts with possession, he may enforce his lien upon the property, into whosesoever hands it may come. The Eleanora Charlotta, 1 Hagg. Adm. 156; The John Perkins, 3 Ware, 89. The very essence of the right to claim salvage is a benefit to the owners by the saving of the property. The supreme court, through Justice Washington, thus defines salvage:

"Salvage is allowable as a reward for the meritorious conduct of the salvor, and in consideration of a benefit conferred on the person whose property he has saved." The Brig Alerta, 9 Cranch, 367.

In The India, 1 W. Rob. 408, Dr. Lushington rejected all claim for salvage, on the grounds that the services had been unproductive of advantage to the owners, and that the salvors quitted the vessel, leaving the salvage service incomplete. When we consider the question whether there was benefit in this case, we are struck with the doubtful character of the services, viewed as effectual salvage services, and with the necessary loss caused by the removal of the merchandise to Key West. There is a feature in the case, in favor of the libelants, which we have not overlooked, viz. their prompt coming from Key West to the disabled vessel. We think this is a case where the compensation of the libelants should be pro labore et opere, and not for salvage services.

The libelants, comprising the corps of men who came on the Cora, numbered 22. They were employed about 5 days. The schooner was valued at about $3,500. There has already been an award in the United States district court, eastern district of Virginia, of $2,500 for the libelants' services, so far as relates to the vessel,—the Eldorado. For the libelants' services, so far as relates to the portion of the cargo taken on board the Cora, we think there should be an award to the 22 men who constituted the crew of the Cora of $25 each,—that is to say, of $550,—and to the owners of the schooner Cora of an equal amount. The decree will therefore be that the decree of the court below be set aside, and that there be a decree as above stated; the libelants recovering their costs in the court below, and the respondents recovering their costs in this court.