### THE BAYAMO.

(Circuit Court of Appeals, Fifth Circuit. June 8, 1909.)

No. 1,896.

SALVAGE (§ 19*)—UNSUCCESSFUL SERVICES—RIGHT TO COMPENSATION ON COMPLETION OF WORK BY ANOTHER.

Libelants contracted to attempt the salvage of a stranded steamship and her cargo, and to save her if they could do so within a reasonable time. They were to receive no pay unless successful. After several days' work without success, the master of the steamship contracted with another and larger vessel, by which she was rescued. Libelants worked in good faith, and rendered valuable aid in preventing the ship from receiving further injuries from storms, lightering cargo, etc. Whether their efforts would have been successful, if continued, was doubtful under the evidence. *Held*, that an award of $5,000, in view of all the facts, was sufficient, and would be affirmed.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. § 47; Dec. Dig. § 19.*]

Pardee, Circuit Judge, dissenting, holds that libelants were entitled to an additional allowance as a salvage reward, in view of the ultimate salvage of the vessel to which they contributed.

Appeal from the District Court of the United States for the Southern District of Florida.

Bisbee & Bedell, for appellants and cross-appellees.

Cockrell & Cockrell and Clarence Bishop Smith, for appellees and cross-appellants.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. A majority of the judges are of opinion that the decree of the District Court is without reversible error. It is therefore affirmed.

PARDEE, Circuit Judge (dissenting). My examination of the record in this case brings me to the following conclusions:

1. The contention of the original libelants to be allowed salvage on the Bayamo the same as if they had effected the full relief of

the ship, and on the ground that they were the first salvors in possession and were taking effective measures, which would have resulted in full relief had they not been discharged—in fact, ousted by the master of the Bayamo—should be denied, because, under the evidence, the court cannot say that the libelants could and would have saved the ship, if left to their own unaided efforts.

2. The services rendered by the libelants were salvage services in view of the ultimate result, because they were effective in aiding the ship to withstand the storm and in keeping afloat until still more effective salvage services could be rendered, and this in putting out anchors, lightering the ship, and aiding to keep her in best position to meet the storms; and they were salvage services particularly in respect to cargo of which the ship had to be lightered, in that they removed a considerable quantity to Miami, aided in loading the Colonial with cargo, and removed considerable cargo from the lower hold to a place of safety on the upper deck.

3. There is no doubt that the libelants acted in the best of faith and rendered meritorious services. They labored diligently, and their tugs and lighters and men were at times exposed to decided risk and peril. Their actual outlay for material was about $1,250, and it would seem that with ordinary allowances for the use of the tugs Three Friends and Martha Helen, with the lighters used and men employed, the sum of $5,000 allowed by Judge Locke is only ordinary compensation for services rendered and materials furnished.

As applicable to the facts of this case, Mr. Jones, author of a highly reputable English work on Salvage, says:

"If part of a salvage service is performed by one set of salvors, and the salvage is afterwards completed by others, the first set are entitled to reward pro tanto for the services which they actually render, and this even although the part they took, standing by itself, would not, in fact, have effected the salvage. Thus, where the crews of a lifeboat and lugger made great and meritorious exertions to save a ship and cargo, but were at length compelled to abandon her, and she was afterwards found and saved by a steamer, the first salvors were, under the circumstances, held to be entitled to salvage. And where a vessel got on the rocks off Folkestone, and received assistance from some small boats, which were unable to get her off, and a tug steamer also tried in vain, and a large passenger steamer towed her off for a few minutes, when the hawser broke, and she went ashore, and she became a wreck, but her cargo, valued at a large amount, was saved, it was held that the boats' crews, as well as the steamers, were entitled to participate in the salvage awarded."

In The Tolomeo (D. C.) 7 Fed. 499, Judge Locke says:

"The principle has been well established that, where benefits have been rendered to property by one set of salvors, nothing but a voluntary absolute abandonment of the enterprise and property will lose a right to save, or share with others who did save finally."

He cites The Ionge Bastian, 5 C. Rob. 323, where the first salvors, having rendered what was considered valuable service by floating a ship from the rocks, in spite of her subsequent sinking, although she subsequently sunk and they did not stay by her, were permitted to share with those who finally weighed her up and brought her into port. Also cites The Island City, 1 Black, 121, 17 L. Ed. 70, where, as he says—

"the schooner Kensington, although neither perfecting a salvage service nor remaining by the vessel, and neither continuing her efforts nor retaining possession, shared in the award of salvage, because she had brought the ship into a place of greater comparative safety."

And I find that the same doctrine was recognized in Muntz v. A Raft of Timber (C. C.) 15 Fed. 555, the syllabus of which, supported by the decision, is:

"If part of a salvage service is performed by one set of salvors, and the salvage is afterwards completed by others, the first set are entitled to reward pro tanto for the services they actually rendered; and this, even though the part they took, standing by itself, would not in fact have effected the salvage."

As the services rendered to the Bayamo by the libelants were salvage services, and as such under the salvage laws the element of reward should enter into their compensation, and as the amount allowed in the lower court, as declared by the judge, was "only an amount for work and labor and expenses incurred," I think the libelants are entitled to relief in this court.[1]

NOTE. The following is the opinion of Locke, District Judge, filed in the court below:

LOCKE, District Judge. The libelants, having found this vessel in distress, agreed to assist her and save her if they could within a reasonable time, with the proviso that it should be 'no cure, no pay'; that is, if they did not save her, they should have no pay. There are always certain questionable matters which may arise in such contracts, when applied to salvage services. What, under the circumstances, is a reasonable time? When may a master, in his anxiety, consider that the salvor has had sufficient opportunity, and be authorized to procure new assistance without becoming liable to the original salvor? And what were the probabilities of ultimate success, if new aid had not been accepted? The principles of law are well established, but their application to this case leaves certain questions to be settled which can only be settled upon probabilities. The two questions of importance which are presented are to the reasonableness of the time occupied and the probabilities of ultimate success of the libelants.

Perils of the sea are always to be considered in contracts or agreements covering maritime services, and, considering the two storms, which all agree prevented actual beneficial assistance during a large portion of the time, it cannot be said that the time occupied was so unreasonable as to forfeit the rights of the libelants to continue their efforts. The rights or duties of salvors, and of masters in charge of property in distress in making or enforcing contracts, are not to be judged or measured by the strict rules of common law, but with a greater flexibility, which will protect the reasonable and equitable rights of all. In such a case as this, where, in spite of the honest efforts of the original salvors, either on account of their inefficient appliances, or bad weather, or other circumstances beyond their control, they were not making such progress as would justify the belief in a final success, it would be unreasonable and against public policy to compel the master, where superior aid could be secured, to wait until the last moment of the prior salvors' efforts and take all the chances of final failures; but in contracting for and accepting such superior aid the parties making such contract make it subject to all the existing rights of the original salvors, and in any such contract the property becomes responsible to them, regardless of any amount which may be promised the new-comers. Even if such later contract should be considered void, it could not affect the prior rights of others not parties to it.

[1] See order at end of opinion of Locke, District Judge.

It is considered in this case, therefore, that the rights acquired by the libelants can in no way be affected by the amount promised the Merritt Company.

The other important questions are of probabilities and uncertainties, which it is impossible to determine beyond a doubt: First, what actual benefits had the libelants rendered the property? and, second, what were the probabilities of future success? The property was in a worse condition when the Relief arrived than upon the arrival of the Three Friends. Would it not have been still worse, had it not been for her presence? It is contended that it would. Whether she would have swung around broadside upon the reef is uncertain; but it is not considered that it is necessary to determine this question definitely, in order to decide that the libelants had a right to continue their efforts, or receive some compensation for what they had done. The more important question is: What were the probabilities of a successful saving of the ship by the original salvors, had not the services of the Relief been accepted? There are reasonable arguments on both sides, and it becomes a question of difficulty, and not one of certainty, as contended by the libelants. When we consider that unquestionably the libelants could have removed the remaining cargo, and could probably have removed the greater part of the water, and that the ship, with her 304 tons of coal and what water would be necessarily left in her, would draw less than 10 feet, it does not seem that with the pleasant weather it would have been so improbable; but when we consider the fact that the repeated and continued efforts of the four steamers, Three Friends, Martha Helen, Colonial, and Forward, to float the ship at a time when her tanks had been about emptied of water and when she was not nearly as far aground as on the 15th, had amounted to nothing, and also the time and efforts taken by the Relief, with her vastly more powerful appliances, and that two of the libelants' pumps had been tried and had not succeeded, the probabilities of success appear very slight. The fact that the ship had been driven further onto the ridge of the reef by the force of the sea does not necessarily show that she could have been pulled completely over it easily, and I am forced to believe that the prospects were not sufficient to justify the continuance of their unaided efforts. In the case of The Eldorado Bryne v. Johnson, 53 Fed. 840, 4 C. C. A. 47, the United States Circuit Court of Appeals considered that the libelants were entitled to a liberal compensation pro opere et labore for what they had done, although they had voluntarily left the stranded ship, taking cargo that had been taken out with them.

In this case, I consider the benefits which may have been rendered the property and the probabilities that the libelants might have saved it finally, had they been permitted to continue, will justify an award sufficient to pay the expense actually incurred, a reasonable amount for the actual work and labor, and for the risk and damage, although it cannot be considered that salvage had been earned more than upon the net value of the property taken ashore. If, as contended by claimants, any amount in addition to that contracted to the Merritt Company would be unreasonably burdensome, it would only be on account of their own contract. The amount awarded will be less than one-half what the parties in interest had agreed to pay to Merritt Company on the net value of the cargo, had it not been brought ashore by the libelants.

A decree for $5,000 and costs will be made.

The following is the order from which the appeal and cross-appeal were taken:

"This cause coming on to be heard upon," etc., "it is hereby decreed that the libelants recover for the services as alleged and proven, as quantum meruit for the work done and labor performed, and for the expenses, risks, and damages incurred in rendering such services, the sum of $5,000, together with their costs herein incurred; and it is further ordered that upon the payment into the registry of the court of said $5,000 and costs taxed at $475.34, the bonds and stipulations herein filed be canceled and annulled."