SIGURJONSSON et al. v. TRANS-AMERICAN TRADERS, Inc.
THE GATITO.
No. 13380.

United States Court of Appeals
Fifth Circuit.

May 8, 1951.

Rehearing Denied May 24, 1951.

Carroll Dunscombe, Stuart, Fla., for appellant.

Walter Humkey, Miami, Fla., for appellee.

Before HOLMES, BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This is an appeal from a decree in admiralty dismissing a libel for seamen's wages, return transportation to their shipping port, and for certain statutory penalties.

During late January and early February, 1950, at the port of New York, the owner of the motorship "Gatito" by oral agreement employed libellants aboard said vessel at a specific rate of pay, to assemble traps and prepare the vessel for a fishing voyage on which libellants would constitute the crew, and would engage in fishing on shares, 50% to the owner, and 50% to be divided amongst the crew according to ratings. The vessel was licensed for fishing only. On February 13, 1950, the oral agreement still being in effect, the vessel sailed on a fishing voyage off the coast of Long Island, New York, but returned to port within twenty-four hours because of bad weather, remaining in port for that reason until February 22, 1950. On that date the vessel sailed for Florida coastal waters, where weather and fishing were expected to be better, to continue the fishing venture.

Before sailing for Florida, the crew executed written articles of employment, which reduced to writing the existing oral agree-

ment, and which contained, *inter alia*, the provisions set out below.[1]

■ It is abundantly clear that libellants were not, as they claim, merchant seamen entitled to seamen's wages under 46 U.S.C.A. § 594, nor to any of the penalties prescribed by 46 U.S.C.A. §§ 596 and 665. Beginning February 13, 1950, libellants were specifically employed to fish on shares, no compensation being due them until the earnings of the vessel were ascertained and liquidated. They were participants in a joint venture, their earnings being contingent upon the outcome. No contract of employment which contemplated the payment of wages, as such, was made by the parties. Libellants were merely to have a share of the proceeds from the sale of fish to be caught by their own labor. In these circumstances, libellants are not entitled to seamen's wages, as such. Williams v. The Sylph, 29 Fed.Cas. No. 17,740, page 1407; Old Point Fish Co. v. Haywood, 4 Cir., 109 F.2d 703, 706. Cf. note to Fritts v. Quinton, 40 A.L.R. 34. Fishing vessels are expressly excluded from the penalty provisions of 46 U.S.C.A. §§ 596 and 665.

■ The fishing venture was commenced on February 13, 1950, when the vessel put to sea off Long Island. The run to Florida was not, as contended by libellants, an ordinary coasting voyage for which they would be entitled to wages as merchant seamen. It was simply a move from one fishing ground to another in furtherance of the fishing enterprise.

■ Nor is there any substantial evidence to support libellants' contention that the vessel's owner wrongfully abandoned the enterprise, so as to entitle libellants to recover either *quantum meruit* as at common law,[2] or within the admiralty rule that a contract of employment will be enforced in behalf of seamen, notwithstanding the failure of the voyage, when the failure is occasioned by the wrongful act of the master or owner.[3]

The evidence shows that the voyage to Florida was beset with many vicissitudes, as a result of which libellants became dissatisfied and threatened to abandon the ship unless they were paid wages for the time already elapsed since they signed on. A few days later, while the owner was seeking legal advice as to his liability to the crew, the libel was filed. This effectually terminated the enterprise. No fish were caught, consequently nothing ever became due to libellants under the fishing contract, and the evidence does not support the charge that the owner wrongfully abandoned the enterprise.

The owner paid the crew in full for their services prior to February 13, 1950, except the sum of $29.75 still due libellant Jorgen Jorgensen, and $1.00 still due libellant Peter Neilson, which sums they are entitled to recover as wages. The final decree is here-

1. "It is hereby agreed that all crew members who are signed on, are not guaranteed any salaries or disbursements for their time or labors. It is also agreed that all crew members and personnel are signed on with shares as agreed further in this agreement according to rating. * * *.

"All members who sign on, do so for a period of six months during which time their (sic) are no disbursements of traveling or any other allowance, should a crew member jump ship, or leave in any other way, of their own accord. If transportation to their home port of New York is at any time allowed, Media of Transportation is held at the discretion of the owners.

"The catch of any trip shall be sold in the market at the highest price available. Furthermore the expenses of the trip itemized in the following. 1. Fuel Oil. 2. Food. 3. Pilot fees. 4. Breakdown parts underway for the engines or ship. Principally the first two above are the first breakdown from any incomes derived from the sale of the catch after these two are deducted, 50% of the remainder goes to the ships complement, the other 50% goes to the owners of the Gatito."

2. Hazen v. Cobb, 96 Fla. 151, 117 So. 853, 858. Cf. note to Fritts v. Quinton, 40 A.L.R. 34.

3. The Avenger, 5 Cir., 251 F. 19; The Bayamo, 5 Cir., 171 F. 65; Johnson v. The Frank S. Hall, D.C., 38 F. 258; Folkes v. Proceeds, Remnants and Surplus of The General Geo. W. Goethals, D.C., 27 F.2d 183; Williams v. The Sylph, 29 Fed.Cas.No.17,740, page 1407; 7 C.J.S., Action of Assumpsit, § 9, pages 117, 118.

by modified to award them these recoveries, with interest at 6% from February 13, 1950, to secure which they are entitled to a maritime lien. As so modified, the decree is affirmed.

It appears that an intervening libel was filed by Nally Cromer, trading as Cromer's Market, to recover $86.08 for food furnished the vessel while at Stuart, Florida, but neither the intervening libel, nor the disposition thereof, if any, is shown by the record now before us. The affirmance herein is without prejudice to a consideration and final disposition of said intervening libel, on the merits. There will be no change in the present taxation of costs on the original libel.

Modified and affirmed.