**Emil BJORNSSON, Appellant,**

v.

**U.S. DOMINATOR, INC., Appellee.**

**No. S–5094.**

Supreme Court of Alaska.

Nov. 12, 1993.

---

Lance Burger, Bauer, Moynihan & Johnson, Seattle, and R. Everett Harris, Jensen, Harris & Roth, Anchorage, for appellant.

Matthew D. Regan and Michael A. Barcott, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Justice.

## I. INTRODUCTION

This breach of contract action arises out of a compensation dispute between Emil Bjornsson and U.S. Dominator, Inc. (the vessel owner). Bjornsson appeals the superior court's decision entering summary judgment in the vessel owner's favor.

On appeal, Bjornsson argues that the superior court erred in not applying 46 U.S.C. § 10601 which requires that fishing compensation arrangements be made in writing in order to be effective.[1] We agree and reverse the superior court's decision.

---

1. Bjornsson also argues, in the alternative to the application of federal law, that Alaska Statute

## II. FACTS AND PROCEEDINGS

Bjornsson worked as a commercial fisherman aboard the U.S. DOMINATOR in February and March 1989 on a trip which left from Lost Harbor and returned to Dutch Harbor, both Alaskan ports. Prior to embarking on the voyage, the parties orally agreed that Bjornsson was to be paid on a five percent "lay share" basis. This meant that he was to be. paid five percent of the adjusted gross sale value of the fish caught. The value of the fish was set at eight cents per pound before the start of the trip. It is undisputed that neither the vessel owner nor its master signed a written crew agreement with Bjornsson.

Bjornsson was not told that he would not be paid if the vessel owner was not paid by the buyer of the fish. The vessel owner contends that, as a customary condition of lay share payments, Bjornsson was entitled to payment only if the vessel owner received payment. The vessel owner reasons that lay share fishermen are usually treated as independent contractors rather than as simple employees under maritime law.

The fishing vessel U.S. DOMINATOR caught fish on the fishing trip, although the record does not indicate how many pounds of fish were caught. The vessel owner sold the fish to the BERING TRADER, a commercial processor. To date, the BERING TRADER has not paid the vessel owner, and the vessel owner has not paid Bjornsson.

The superior court granted summary judgment in favor of the vessel owner without explaining its decision. Bjornsson now brings this appeal arguing that the superior court erred in failing to apply 46 U.S.C. §§ 10601 and 11107 to his case.

## III. DISCUSSION

■ We review de novo whether the superior court erred in deciding on summary judgment that Bjornsson was not entitled to payment until the vessel owner received payment. See Brown v. State, 816 P.2d 1368, 1371 n. 2 (Alaska 1991). We must determine whether any genuine issues of material fact remain and whether the moving party is entitled to judgment as a matter of law. See Alaska R.Civ.P. 56(c); Shanks v. Upjohn Co., 835 P.2d 1189, 1193 (Alaska 1992).

### A. 46 U.S.C. § 10601 Applies to Lay Share Fishing Agreements

■ Federal law requires both the master and owner of a fishing vessel to make and sign an agreement in writing with every seaman employed before beginning a fishing voyage. 46 U.S.C. § 10601(a) and (b) (1988). The written agreement must "include the terms of any wage, share, or other compensation arrangement peculiar to the fishery in which the vessel will be engaged during the period of the agreement; and ... include other agreed terms." 46 U.S.C. § 10601(c)(2) and (3) (1988) (emphasis added).

■ The vessel owner admits that neither the owner nor the master made a written agreement pursuant to section 10601. The vessel owner argues, however, that section 10601 was not intended to prohibit oral lay share fishing arrangements. Instead, the vessel owner contends that under maritime law, fishing lay share agreements are a form of joint venture whereby the fisherman is treated as a partner rather than an employee.

Federal law is split on this issue. Some courts interpreting earlier versions of section 10601[2] and related sections have not applied them to lay share fishermen. See, e.g., The Cornelia M. Kingsland, 25 Fed. 856, 859–61 (S.D.N.Y.1885) (fishermen who worked for shares in the catch were not considered "seamen" within the meaning of the statute); Sigurjonsson v. Trans–America Traders, Inc., 188 F.2d 760 (5th Cir.1951) (members of a crew who worked

23.05.140 applies. Because this situation is controlled by federal law, we do not address the Alaska statute.

**2.** See, e.g., former 46 U.S.C.A. § 531 (West 1958 & Supp.1993) ("The master of any vessel ... shall, before proceeding on such fishing voyage, make an agreement in writing with every fisherman who may be employed therein....").

under contract which specified a percentage of the proceeds from fish caught did not qualify as "merchant seamen"), *cert. denied,* 342 U.S. 831, 72 S.Ct. 46, 96 L.Ed. 629 (1951). Other courts, however, have held that lay share fishermen are treated as "seamen" or employees, rather than as joint venturers who would not be protected under the regulations at issue here. *See, e.g., Whalen v. The Silver Spring,* 29 F.Cas. 852 (D.C.Mass.1854) (No. 17,477) (holding that former section 531 "is positive and unequivocal, that the master of every fishing vessel of more than twenty tons shall ... make an agreement in writing for shares, with every fisherman employed therein."); *Stevens v. Seacoast Co.,* 414 F.2d 1032 (5th Cir.1969) (rejecting thesis that participants in lay share fishing arrangement are partners in a joint venture); *Southern Shell Fish Co. v. Plaisance,* 196 F.2d 312 (5th Cir.1952) (affirming jury's factual determination that participant in lay share fishing agreement was employee of shipowner with whom shares were to be divided); *Cape Shore Fish Co. v. United States,* 165 Ct.Cl. 630, 330 F.2d 961 (1964) (rejecting contention that lay share agreement derogates from employer-employee relationship); *Skrivanich v. Davis,* 29 Wash.2d 150, 186 P.2d 364 (1947) (concluding that lay share fishermen are employees and not members of a joint venture).

We conclude that the latter view is better reasoned. By its terms, section 10601 provides that "seamen" are to be protected by the statute. The plain language of 46 U.S.C. § 10101 indicates that lay share fishermen are "seamen" as defined in this part of the code.[3] Furthermore, section 10601, enacted in 1988, specifically states that it applies to "share" agreements. Earlier versions of section 10601, such as former section 531, did not so specify. Section 10601 clearly requires a written contract between both the owner and the master of the vessel and the seaman. No such written agreement existed here. Therefore, the vessel owner violated 46 U.S.C. § 10601.[4]

**B. 46 U.S.C. § 11107 Provides a Penalty for Violation of 46 U.S.C. § 10601**

■ Section 10601 provides no clear sanction for failure to reduce a fishing agreement to writing. However, federal law provides a penalty under a different section of the same Part G[5] of Title 46 of the United States Code. Section 11107 states, "An engagement of a seaman contrary to a law of the United States is void." 46 U.S.C. § 11107 (1988). If the engagement is void, the seaman can recover "the highest rate of wages at the port from which the seaman was engaged or the amount [of] agreed [wages] ... at the time of engagement, whichever is higher." *Id.* Without a written contract, Bjornsson's employment agreement regarding his services aboard the U.S. DOMINATOR is contrary to law, and thus, void pursuant to section 11107. Therefore, Bjornsson may recover the higher of the highest rate of wages at Lost Harbor, the port at which he was engaged, or the amount of his agreed upon wage.

■ The vessel owner contends that section 11107 does not apply to lay share fishermen, but rather only to "merchant seamen." Thus, the vessel owner argues that section 11107 does not provide a reme-

---

**3.** "Seaman" is defined as meaning "an individual ... engaged or employed in any capacity on board a vessel." 46 U.S.C. § 10101 (1988) (Part G—Merchant Seamen Protection and Relief).

**4.** The vessel owner also argues that the requirement of a written contract is to protect the seaman from changes in the contract once at sea and that here, the terms of the contract are not in dispute. The vessel owner claims that because there was no change in the contract term, he did not violate "the spirit" of section 10601. This argument is flawed. Central to this dispute is the issue of whether a certain term, payment to the fisherman conditioned upon payment to the vessel owner, was part of the contract. Presumably, a written contract would have eliminated this dispute. Thus, the vessel owner violated section 10601 both in letter and spirit.

**5.** Part G is entitled "Merchant Seaman Protection and Relief". 46 U.S.C. §§ 10101–11507 (Supp.1992).

dy for violation of section 10601.[6] The vessel owner relies on two cases to support this argument, *The Cornelia M. Kingsland*, 25 Fed. 856 (S.D.N.Y.1885) (treating "fishermen" different from "merchant seamen"), and *Sigurjonsson*, 188 F.2d 760 (5th Cir.1951) (holding that lay share fishermen are not "merchant seamen entitled to seamen's wages under 46 U.S.C. § 594, nor to any of the penalties prescribed by 46 U.S.C. §§ 596 and 665."). His reliance is misplaced, however, because both cases pertain to former code sections that have since been repealed and replaced with new code sections. Sections 594, 596, and 665 were repealed in 1983 and replaced with sections 10313, 10504, and 11106. *See* former 46 U.S.C. §§ 596 and 665, *repealed by* Pub.L. No. 98–89, § 4(b), 97 Stat. 600–604 (1983); former 46 U.S.C. § 665, *repealed by* Pub.L. No. 98–89, § 4(b), 97 Stat. 600–605 (1983); 46 U.S.C. §§ 10313, 10504, 11106 (Supp. 1992). We do not rely on any of these sections in rendering our decision. Instead, we rely on section 11107.

Before 1983, the sections that regulated fishing voyages and the sections that regulated merchant voyages were located in separate "parts" of Title 46 of the United States Code. Today as in 1989 when Bjornsson was employed aboard the U.S. DOMINATOR, the provisions for both merchant seamen and fishermen fall under the same part, Part G, entitled "Merchant Seamen Protection and Relief." The earlier separate sections pertaining to the requirement of a written employment agreement and the penalties for noncompliance were repealed and replaced with sections 10601 and 11107 in Part G.[7]

The Code defines "seaman," as utilized throughout Part G, as "an individual ... engaged or employed in any capacity on board a vessel." 46 U.S.C. § 10101(3). Section 10101(3) specifically excludes from the definition of "seaman" scientists, sailing instructors and sailing students, but it does not expressly limit its provisions to "merchant" seamen, nor does it expressly exclude lay share fishermen. *See* 46 U.S.C. § 10101(3). Therefore, we interpret the definition of "seamen" to include lay share fishermen.[8] Because section 11107 applies to seamen, and does not specifically exclude lay share fishermen, we conclude that it should be applied when vessel owners fail to make a written contract with lay share fishermen under section 10601.

Section 11107 provides that a seaman who is engaged contrary to law is entitled to recover either the highest rate of wages at the port from which he is engaged or the amount agreed upon at the time of engage-

---

**6.** The vessel owner claims that 46 U.S.C. § 10602 provides the proper remedy for violation of section 10601. Section 10602 provides:
When fish caught under an agreement under section 10601 of this title are delivered to the owner of the vessel for processing and are sold, the vessel is liable in rem for the wages and shares of the proceeds of the seamen.
46 U.S.C. § 10602(a) (Supp.1992). The vessel owner fails to recognize, however, that while section 10602 gives seamen an additional right in rem, it does not provide a penalty for noncompliance with section 10601. *See* 46 U.S.C. § 10602 (Supp.1992). Section 10602 does not address the fisherman's remedy when the compensation arrangement is not made in writing. *Id.*

**7.** *See* former 46 U.S.C. § 531, *repealed by* Pub.L. No. 100–424, § 6(c), 102 Stat. 1592 (1988) (predecessor to section 10601, requiring written contracts for fishermen; former 46 U.S.C. § 564 and its accompanying penalty statute, 46 U.S.C. § 578, *repealed by* Pub.L. No. 98–89, § 4(b), 97 Stat. 600–602 (1983) (predecessor to section 11107, providing a penalty for lack of written contract with every merchant seaman).

Although Congress has previously stated that "the provisions of [Part G] generally do not apply to fishing vessels," Congress passed section 10601 subsequent to making this statement and incorporated it into Part G, the same part in which section 11107 appears. *See* Pub.L.N. 98–89, 1983 U.S.C.C.A.N. 924, 1004. It is presumed that Congress was aware of the existence of section 11107 when it enacted section 10601. *Native Village of Venetie I.R.A. Council v. State of Alaska*, 944 F.2d 548, 554 (9th Cir.1991) ("Congress is presumed to be knowledgeable about existing law pertinent to any new legislation it enacts."); *Hafling v. Inlandboatmen's Union of Pacific*, 585 P.2d 870, 877 (Alaska 1978) ("it is assumed that whenever the legislature enacts a provision, it has in mind previous statutes relating to the same subject matter, and all should be construed together.").

**8.** *See also* 46 U.S.C. §§ 11101(a), (b), (d) (specifying "merchant" vessels), and 11106(d) (specifically excluding fishing vessels) (Supp.1992).

ment, whichever is higher. 46 U.S.C. § 11107. On remand, the trial court must compare the highest rate of wages at Lost Harbor, the port of engagement, with the amount of lay share originally agreed upon pursuant to the oral agreement.

In determining the terms of the agreement, the court should construe the oral agreement to protect the fisherman. *Brown v. State*, 816 P.2d 1368, 1371 (Alaska 1991) ("Sailors are historically the wards of admiralty, and the courts have long accorded them special protection.").[9] Additionally, as the chapter title reflects, section 11107 is designed for fishermen's "Protection and Relief." Therefore, we interpret the words of section 11107, "the amount agreed to be given the seaman at the time of engagement," as referencing terms of the agreement that are not in dispute (i.e., those parts of the agreement as to which both parties agree). Any term in dispute has not been agreed to by the parties and therefore, is not included in the sanction created by section 11107. The parties agree that Bjornsson was to be paid five percent of the gross sale value which was set at eight cents per pound. The trial court must determine the number of pounds caught and complete the calculation.[10] Because the parties disagree about whether a condition of payment existed, we will not consider that term as part of the agreement. Thus, we hold that Bjornsson is entitled to the amount agreed upon before the voyage or the highest rate of wages at Lost Harbor, whichever is higher.

## IV. *CONCLUSION*

We conclude that 46 U.S.C. §§ 10601 and 11107 apply to lay share fishermen. Lay share fishing ventures are subject to the writing requirement of section 10601. The very point of section 10601 is to avoid later misunderstandings and differing interpretations, such as those which have brought these two parties before this court. Lay share arrangements must be written down to avoid penalties under section 11107. If the writing is ambiguous, custom may then be considered to interpret the writing.

Therefore, the superior court's decision in favor of the vessel owner on summary judgment is REVERSED. The case is REMANDED with directions for the superior court to enter summary judgment in favor of Bjornsson and to determine the proper amount of compensation, the higher of the highest wages at Lost Harbor or the agreed upon lay share.

---

**9.** The Ninth Circuit similarly protects fishermen with regard to conflicts over compensation. "[It is a] familiar principle that seamen are the favorites of admiralty and their economic interests [are] entitled to the fullest possible legal protection." *Carbone v. Ursich*, 1954 A.M.C. 169, 175, 209 F.2d 178 (9th Cir.1953).

**10.** The agreed upon amount is not difficult to determine. The agreement was for five percent of the adjusted gross sale value of the fish *caught* (not sold). The value was set before the trip at eight cents per pound. The vessel owner must provide the figure for the number of pounds caught.