**TRANSPACIFIC WESTBOUND RATE AGREEMENT, Petitioner,**

**and**

**Asia North America Eastbound Agreement, Intervenor,**

v.

**FEDERAL MARITIME COMMISSION, United States of America, Respondents.**

**No. 89–70530.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1991.

Decided July 11, 1991.

As Amended Dec. 9, 1991.

---

R. Frederic Fisher, Lillick & Charles, San Francisco, Cal., for petitioner.

John C. Cunningham, Federal Maritime Com'n, Washington, D.C., for respondents.

Before WALLACE, Chief Judge, GOODWIN and FLETCHER, Circuit Judges.

WALLACE, Chief Judge:

Transpacific Westbound Rate Agreement (Transpacific) petitions for review of an order of the Federal Maritime Commission (Commission). The Commission's order declined jurisdiction over parts of shipping agreements that regulate wholly foreign transportation. Transpacific contends that this order violates the clear language of the Shipping Act of 1984 (Act). The Commission had jurisdiction pursuant to 46 U.S.C.App. § 1713. We have jurisdiction to review the Commission's order under 28 U.S.C. §§ 2342 and 2349. We deny the petition.

I

The Act, 46 U.S.C.App. §§ 1701–1719, authorizes the Commission to regulate ocean shipping lines operating between the United States and foreign countries. The Commission is responsible for monitoring agreements between ocean common carriers concerning rates, sailings, conditions of service, and similar matters, and also for enforcing a number of prohibitions against discriminatory and unreasonable rates and practices. *See* Act §§ 5, 6, 8, 10; 46 U.S.C.App. §§ 1704, 1705, 1707, 1709. All filed agreements are immune from the antitrust laws. *Id.* § 7(a), 46 U.S.C.App. § 1706(a).

Sections 4 and 5 of the Act set the standard for mandatory filing of shipping agreements. Section 5 provides that "[a] true copy of every agreement entered into with respect to an activity described [by section 4] shall be filed with the Commission, except agreements related to transportation to be performed within or between foreign countries." *Id.* § 5(a), 46 U.S.C.App. § 1704(a). In turn, section 4 contains two criteria for the subject agreements: they must be among "ocean common carriers" and must concern certain specified activities. *Id.* § 4(a), 46 U.S.C.App. § 1703(a). Thus, as the Commission has stated, section 4 "define[s] the agreements subject to [Commission] jurisdiction by *party* and *subject matter.*"

The parties subject to Commission regulation are ocean common carriers as de-

fined in sections 3(6) and 3(18). Section 3(6) provides that

"common carrier" means a person holding itself out to the general public to provide transportation by water of passengers or cargo between the United States and a foreign country for compensation that

(A) assumes responsibility for the transportation ... and

(B) utilizes, for all or part of that transportation, a vessel operating on the high seas or the Great Lakes between a port in the United States and a port in a foreign country....

*Id.* § 3(6), 46 U.S.C.App. § 1702(6); *see also id.* § 3(18), 46 U.S.C.App. § 1706(18) (defining ocean common carrier). To qualify as an ocean common carrier under this definition, the carrier must hold itself out to the general public to provide transportation between a port in the United States and a port in a foreign country. Carriers who provide transportation solely between foreign countries are not covered by the Act. *See Austasia Intermodal Lines, Ltd. v. FMC,* 580 F.2d 642, 646 (D.C.Cir.1978) (*Austasia*) (no jurisdiction over carriers who operate solely between foreign ports).

In 1987, the Commission proposed a rule which would permit carriers not subject to the act to file *voluntarily* their shipping agreements and thus receive the antitrust immunity conferred by section 7. 52 Fed. Reg. 46,501 (1987). The Commission considered this option because section 7 of the Act provides antitrust immunity only for filed agreements, and for foreign-foreign agreements which have no substantial effect on United States commerce. *See* Act § 7(a), 46 U.S.C.App. § 1706(a). Thus, the Commission sought to close the gap in antitrust immunity that exists for foreign-foreign agreements which affect United States commerce.

After receiving comment from several shipping interests and the Department of Justice, the Commission ordered withdrawal of the proposed rule. 53 Fed.Reg. 50,-264 (1988). In its order, the Commission rejected the concept of voluntary filing, and also stated that agreements containing both regulated and unregulated activities (mixed agreements) could no longer be filed in their entirety. Instead, the Commission held that it had jurisdiction *only* over the United States-foreign portion of the agreements.

Transpacific, an association of ocean common carriers whose members serve ports in the United States, Canada, and the Far East, petitioned the Commission for reconsideration of its order of withdrawal. Because the Transpacific agreement is a mixed agreement, covering both United States-foreign and foreign-foreign transportation, the order removed part of the agreement from the Commission's jurisdiction. After the Commission declined to reconsider its order, Transpacific petitioned this court for review. Transpacific challenges the Commission's ruling declining jurisdiction over the foreign-foreign portions of mixed agreements. In the alternative, Transpacific defends the concept of voluntary filing, arguing that parties may expand the Commission's jurisdiction by consent.

## II

Judicial review of an agency's construction of a statute is guided by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (*Chevron*). First, we must determine whether the language of the statute is clear. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781; *see also Public Employees Retirement System v. Betts,* 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989) (no deference to agency when interpretation is at odds with clear language of statute). However, "if the statute is silent or ambiguous with respect to the specific issue," "the court does not simply impose its own construction on the statute.... Rather, ... the question for the court is whether the agency's answer is based on a permissible construction of the

statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

### III

The Commission's ruling declining jurisdiction over foreign-foreign portions of mixed agreements hinges on its interpretation of the term "common carrier." The Commission has held that a carrier is a common carrier only to the extent that it holds itself out to provide transportation between the United States and a foreign port. *See* Act § 3(6), 46 U.S.C.App. § 1702(6). Thus, "persons who enter into agreements governing, in whole or in part, transportation between foreign ports are not 'common carriers' to the extent of such [transportation]." The Commission further reasons that the definition of common carrier limits the scope of its subject matter jurisdiction, and that agreements may be filed under section 5 only to the extent that they are between common carriers. Transpacific urges us to reject this analysis.

### A.

■ Transpacific first challenges the Commission's interpretation of the term "common carrier." *Id.* § 3(6), 46 U.S.C.App. § 1702(6). Transpacific points out that section 3(6) defines a common carrier as "a person" who holds "itself" out to provide certain transportation. Transpacific argues that any carrier which has at least one United States-foreign route is a common carrier for all purposes, even if that carrier also has foreign-foreign routes.

The Commission was not required to accept Transpacific's expansive interpretation of the term "common carrier." In addition to the filing requirements of sections 4 and 5, several other Act provisions establish duties for defined common carriers. *See id.* § 8(a), 46 U.S.C.App. § 1707(a) ("each common carrier" must file "tariffs showing all its rates ... between all points or ports on its own route"); *id.* § 10, 46 U.S.C.App. § 1709 (prohibiting common carriers from engaging in discrimination). Under Transpacific's interpretation of section 3(6), a

carrier with a single United States-foreign route would be required to comply with these requirements with respect to wholly foreign activities.

The Commission rejected this interpretation, stating that "as a matter of common sense and rational regulation, there must be some geographic limit to the Commission's [regulatory] authority." The argument is persuasive. There is nothing in the history or structure of the Act to suggest that Congress intended the Commission to engage in worldwide regulation. To the contrary, the Committee reports on the Act state that "[the] definition [of common carrier] applies *only to the extent* the passengers or cargo transported are loaded or discharged at a U.S. port." S.Rep. No. 3, 98th Cong., 1st Sess. 19 (1983) (emphasis added). We therefore conclude that the Commission's narrow interpretation of common carriage "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781–82.

■ Transpacific also argues that the Commission erred by concluding that the definition of common carrier limits the scope of its jurisdiction over agreements. Transpacific contends that the statutory definition of common carrier is relevant only to establish that there are at least two parties to an agreement who are common carriers. As the Commission observed, under this theory section 4 agreements could be "as broad geographically as the trades served," and "world-wide in scope, if the carriers so desire."

In *Austasia*, the District of Columbia Circuit held that the definition of common carriage limits the Commission's regulatory power. In interpreting the tariff-filing requirements of the Shipping Act, 1916 (1916 Act), the court stated that "[the 1916 Act] use[s] the term 'common carrier by water in foreign commerce' to define the scope of [the] tariff filing requirements; therefore, the limits of the Commission's jurisdiction ... must necessarily depend upon the meaning and interpretation of the [common carriage] definition." 580 F.2d at 644. The court concluded that because the

carrier did not call at a United States port, it did not fall within the definition of common carrier, and the Commission was without power to regulate its activities. *Id.* at 646.

We agree with the District of Columbia Circuit that the definition of common carrier places limits on the Commission's jurisdiction. Like the tariff-filing requirements at issue in *Austasia,* section 4 of the Act defines the subject agreements as "by or among ocean common carriers." Act § 4(a), 46 U.S.C.App. § 1703(a). A rational reading of this provision compels the conclusion that jurisdiction under section 4 is limited by "the meaning and interpretation of the [common carriage] definition." *Austasia,* 580 F.2d at 644.

■ It would also appear that Transpacific's proposed reading of section 4 would create a disparity between antitrust immunity and Commission regulation. Transpacific contends that any agreement between two or more common carriers may be filed in its entirety, and thus qualify for antitrust immunity under section 7. However, because many provisions in the Act describe Commission regulatory power in terms of "common carriers," the Commission would be without power to oversee the activities of non-common carriers subject to the agreement. *See* Act § 10(b)-(d), 46 U.S.C.App. § 1709(b)-(d) (prohibiting common carriers from engaging in discrimination, boycotts, and other unfair activities); *id.* § 13, 46 U.S.C.App. § 1712 (describing penalties that may be assessed against common carriers). It does not seem logical that Congress intended to confer antitrust immunity on parties largely outside of the regulatory power of the Commission, and this constitutes an additional indication that the Commission's interpretation of section 4 is reasonable.

Transpacific finally argues that even if the Commission's reading of section 4, standing alone, is reasonable, it conflicts with other requirements of the Act. First, Transpacific relies on section 5, which states that "[a] true copy of every agreement entered into with respect to an activity described [in section 4] shall be filed with the Commission." *Id.* § 5(a), 46 U.S.C.App. § 1704(a). Because the Commission's order requires Transpacific to excise portions of its mixed agreements prior to filing, Transpacific claims that compliance with the order will violate the "true copy" requirement of section 5.

There is no inconsistency between section 5 and the Commission's ruling. The true copy requirement of section 5 applies only to agreements that fall within the scope of section 4. Therefore, section 5 requires that carriers file a true copy of the portions of mixed agreements covering United States-foreign commerce. *See also id.* § 3(1), 46 U.S.C.App. § 1702(1) (defining agreement as any "understanding, arrangement, or association ... and any modification or cancellation thereof").

Transpacific also argues that the withdrawal order conflicts with section 11 of the Act. Section 11 authorizes modification of filed agreements only when the agreement is "in violation of" substantive Act requirements. *Id.* § 11(c), 46 U.S.C.App. § 1710(c). Transpacific contends that mixed commerce agreements do not violate any Act requirements, and that the Commission is therefore without power to reject, or order modification of, these agreements.

This argument overlooks the effect of section 6(b), which states that "[t]he Commission shall reject any agreement ... [that] it finds does not meet the requirements of [section 5]." *Id.* § 6(b), 46 U.S.C.App. § 1705(b). Because section 5 incorporates the jurisdictional requirements of section 4, it implicitly provides authorization for the Commission to reject agreements which are beyond the scope of its jurisdiction. *See id.* § 5(a), 46 U.S.C.App. § 1704(a).

We conclude that the Commission's jurisdictional ruling does not conflict with the clear language of the Act. Because Congress has not directly addressed the issue of the Commission's jurisdiction over mixed agreements, we must uphold the Commission's analysis as long as it is reasonable. *Chevron,* 467 U.S. at 845, 104 S.Ct. at 2783. We hold that it is.

### B.

■ Transpacific argues that the Commission's jurisdictional ruling conflicts with decades of precedent. It contends that courts have consistently upheld the Commission's assertion of jurisdiction over agreements concerning both regulated and unregulated activities or parties.

Transpacific relies primarily on *Trans–Pacific Freight Conference of Japan v. FMC*, 314 F.2d 928 (9th Cir.1963) (*Trans–Pacific Freight*), in which we affirmed the Commission's assertion of jurisdiction over a dispute arising under an agreement that covered both United States-foreign and foreign-foreign trade. The issue in that case concerned the conference's employment of a "neutral body," which sought to assess fines against two of the conference members. *Id.* at 930. In holding that the appointment of the neutral body did not conform to the procedures in the agreement, the Commission rejected the parties' arguments that it lacked jurisdiction because the dispute arose out of an incident occurring on a wholly foreign route. We affirmed, holding that the Commission properly asserted jurisdiction over the foreign dispute because the interpretation of the neutral body requirement was a matter of general importance to the entire agreement. *Id.* at 933.

It is true that the *Trans–Pacific Freight* opinion suggested that the Commission would have jurisdiction over any dispute arising under the mixed agreement. *Id.* However, that issue was not before the court, because the Commission's assertion of jurisdiction was based on the fact that the dispute was directly relevant to administration of the United States-foreign portion of the agreement. *States Marine Lines, Inc. v. Trans–Pacific Freight Conference of Japan*, 7 F.M.C. 204, 209, 212–13 (1962). In fact, the Commission explicitly stated that it would not "rule on malpractices in commerce [in foreign trade] or [attempt to] regulate that trade." *Id.* at 213. Given the limited scope of the Commission's ruling being reviewed, we believe that the opinion's suggestions about mixed agreements may properly be characterized as dicta, and are not binding upon us.

In addition, it is not clear that *Trans–Pacific Freight* is on point. The case involved an interpretation of the 1916 Act, which did not explicitly exclude foreign-foreign agreements from its coverage. *See* 1916 Act, 46 U.S.C.App. §§ 801–842 (amended 1984). When the 1916 Act was revised, the status of foreign-foreign agreements was reexamined, and the Senate Commerce Committee considered a provision that would have permitted voluntary filing of foreign-foreign agreements. *See Ocean Shipping Act of 1979, Hearings before the Subcommittee on Merchant Marine and Tourism of the Senate Committee on Commerce, Science, and Transportation*, 96th Cong., 1st Sess. 35–36, 89 (1970). This provision was eventually dropped, and, as passed, the Act included an exception from filing for "agreements related to transportation to be performed within or between foreign countries." Act § 5(a), 46 U.S.C.App. § 1704(a).

These revisions of the 1916 Act are relevant to the issue of jurisdiction over mixed agreements. Congress's apparent rejection of the concept of voluntary filing would be without significance if carriers were permitted to expand unilaterally the scope of the Commission's jurisdiction by including foreign routes in covered agreements. Similarly, section 5's new filing exclusion for foreign-foreign agreements provides strong evidence that Congress did not intend for the Commission to have jurisdiction over the wholly foreign portion of mixed agreements. Therefore, we agree with the Commission that the statements of *Trans–Pacific Freight* about the 1916 Act do not bind us in light of subsequent substantive changes to the 1916 Act.

Transpacific also argues that the Commission's ruling conflicts with *Volkswagenwerk Aktiengesellschaft v. FMC*, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968), and *FMC v. Pacific Maritime Association*, 435 U.S. 40, 98 S.Ct. 927, 55 L.Ed.2d 96 (1978) (*Pacific Maritime*). Once more, both of these cases arose under the 1916 Act, and, as the Commission stated, "did

not involve the special problem of defining rational and coherent limits on the Commission's geographic jurisdiction in the wake of the new filing exclusion for foreign-to-foreign agreements." In addition, neither case involved the issue of the Commission's jurisdiction over agreements concerning shipping routes between foreign countries.

In *Volkswagenwerk*, the Commission declined jurisdiction over a dispute concerning an agreement between common carriers to raise money for employee benefits. The Commission held that although the agreement was "clearly within the plain language of [the 1916 Act]," it lacked jurisdiction because there was no evidence that the agreement affected international ocean competition. 390 U.S. at 271, 88 S.Ct. at 935. However, the Supreme Court reversed, stating that "to limit [Commission jurisdiction to] agreements that 'affect competition' ... simply does not square with the structure of the statute." *Id.* at 275, 88 S.Ct. at 937. In reversing, the Court admonished the Commission for taking "an extremely narrow view of a statute that uses expansive language." *Id.* at 273, 88 S.Ct. at 936.

*Volkswagenwerk* is not on point. *Volkswagenwerk* involved the issue of what type of agreements are subject to Commission jurisdiction. The Supreme Court's interpretation of the *subject matter* requirement of section 15 of the 1916 Act (now section 4(a) of the Act) is not dispositive of the *parties* requirement of the Act.

In contrast, *Pacific Maritime* involved an agreement between ocean common carriers that was clearly within the Commission's subject matter jurisdiction as defined by section 15 of the 1916 Act. However, the common carriers involved argued that the agreement was beyond the scope of the Commission's jurisdiction because it bound a labor union. The court of appeals agreed, holding that "*any* collective-bargaining contract, whatever its impact on competition, was exempt from filing with the Commission." *Pacific Maritime*, 435 U.S. at 52, 98 S.Ct. at 935. The Supreme Court reversed, rejecting the appellate court's position that national labor policy

created an implicit exception to the requirements of the 1916 Act. *Id.* at 52–53, 98 S.Ct. at 935.

Given the issue presented in the case, *Pacific Maritime* does not require the Commission to assert jurisdiction over agreements that are beyond the geographic reach of the Act. *Pacific Maritime* addressed the issue of whether the presence of certain parties could deprive the Commission of jurisdiction over agreements otherwise within the scope of the 1916 Act. That issue is quite separate from the one present here—whether agreements which do not satisfy the subject matter requirements of the Act can be brought within the scope of the Commission's jurisdiction by being appended to other regulated agreements.

■ Transpacific points to numerous other cases which it states demonstrate that the Commission has previously assumed jurisdiction over both regulated and unregulated activities or parties. *See, e.g., Grace Line, Inc. v. FMB*, 280 F.2d 790, 792 (2d Cir.1960), *cert. denied*, 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961); *New York Shipping Association v. FMC*, 495 F.2d 1215, 1220 (2d Cir.), *cert. denied*, 419 U.S. 964, 95 S.Ct. 224, 42 L.Ed.2d 178 (1974). However, even assuming that the Commission's ruling is a departure from its prior precedents, it may be upheld if explained adequately. *See Chevron*, 467 U.S. at 863–64, 104 S.Ct. at 2792. In this case, we approve the Commission's reasoning that "[t]he precedents that lend support to [Commission] jurisdiction ... [precede] the repeated expressions of Congressional will in the legislative history of the 1984 Act that the new statute should be limited precisely to transportation between the United States and a foreign country."

Because there is no material conflict with our prior precedent, we reject Transpacific's argument that we may overrule the Commission's interpretation of the Act merely because it represents a potential departure from prior interpretations of the 1916 Act.

## IV

Transpacific argues in the alternative that agreements not subject to Commission jurisdiction may nonetheless be voluntarily filed to obtain antitrust immunity under section 7(a). *See* Act § 7(a), 46 U.S.C.App. § 1706(a) (providing antitrust immunity for "any agreement that has been filed under [section 5]"). Transpacific provides us with no support for this argument in the history or structure of the statute.

At the outset, we observe that to permit voluntary filing would violate the basic principle that "as a statutory entity, the Commission cannot acquire jurisdiction merely by agreement of the parties before it." *American Mail Line Ltd. v. FMC*, 503 F.2d 157, 170 (D.C.Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). Moreover, as discussed earlier, the legislative history suggests that Congress considered, but discarded, the voluntary filing option. Congress's inaction, coupled with the well-established prohibition against voluntary expansion of agency jurisdiction, support the Commission's conclusion that the Act does not permit voluntary filing.

In addition, voluntarily filed agreements would be beyond the enforcement powers of the Commission. Section 10 of the Act gives the Commission power to award damages when a carrier violates any agreement *"required* to be filed under [section 5 of the Act]." Act § 10(a)(3), 46 U.S.C.App. § 1709(a)(3) (emphasis added); *see also id.* § 13, 46 U.S.C.App. § 1712 (setting penalties for violations of section 10 and other provisions of the Act). It is implausible that Congress would provide a mechanism for shipping interests to obtain antitrust immunity, but otherwise be insulated from any form of agency regulation.

Based on these considerations, we hold that the Commission's rejection of the voluntary filing option is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

Because there is no error in the Commission's interpretation of the Act, Transpacific's petition for review is denied.

PETITION DENIED.