189 F.3d 834 (9th Cir. 1999)
 UNITED STATES OF AMERICA, Plaintiff-Appellant,
v.
TUCOR INTERNATIONAL, INC.; TUCOR INDUSTRIES, INC., d/b/a TUCOR MOVING & STORAGE; PHILIPPINE AMERICAN MOVING & STORAGE CORPORATION; LUZON MOVING & STORAGE CORPORATION; GEORGE SCHULTZE, SR.; GEORGE SCHULTZE, JR., Defendants-Appellees,
and
D.M. NAZARENO & SONS, INC.; APEX MOVING & STORAGE CORPORATION; JOSE C. SINGSON, JR.; ARTURO G. NAZARENO, Defendants.
 No. 98-10316
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted April 13, 1999
Filed September 2, 1999
 
 Robert J. Wiggers, United States Department of Justice, Washington, D.C., for the plaintiff-appellant.
 Phillip Torres, Gayle & Teker, Agana, Guam; James R. Wyrsch, Wyrsch Hobbs Mirakian & Lee, Kansas City, Missouri; Warren L. Dean, Thompson Coburn, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; D. Lowell Jensen, District Judge, Presiding. D.C. No. CV-92-00425-DLJ.
 Before: Mary M. Schroeder, Stephen Reinhardt, and Barry G. Silverman, Circuit Judges.
 SILVERMAN, Circuit Judge:
 
 
 1
 Section 7(a)(4) of the Shipping Act of 1984 states:"The antitrust laws do not apply to . . . any agreement or activity concerning the foreign inland segment of through transportation provided in a United States import or export trade." We hold that this language is clear and unambiguous, and exempts from criminal prosecution those engaged in trucking household goods to and from points entirely within a foreign country as part of "through transportation" to the United States. We affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Tucor International and Tucor Industries (the "Tucor defendants") are affiliated corporations that transported by truck the household goods of military personnel from United States military bases in the Philippines to other points within the Philippines. Philippine-American Moving & Storage, Luzon Moving & Storage, George Schulze, Sr., and George Schulze, Jr. (the "Luzon defendants") are Philippine corporations and individuals that also engaged in the trucking of goods between U.S. military installations and other destinations within the Philippines.
 
 
 3
 When American military personnel stationed in the Philippines were to be redeployed to the United States, our government arranged for the shipment of theirhousehold belongings from the Philippines to American destinations. The government contracted for "through transportation" -i.e., transportation provided under one bill of lading that includes all of the interrelated segments from the point of origin in the Philippines to the service person's new home in the U.S., though provided by different carriers along the way. The defendants are motor carriers operating entirely within the Philippines. For their part of the "through transportation, " they packed, picked up, and trucked household shipments from Subic Naval Base and Clark Air Force Base, both in the Philippines, to a Philippine seaport. That is where the defendants' involvement ended. The shipments were then loaded onto oceangoing vessels bound for the United States. U.S. motor carriers picked up the shipments at American seaports and delivered them to their U.S. destinations.
 
 
 4
 A federal grand jury indicted the Tucor defendants and the Luzon defendants for price fixing in violation of Section 1 of the Sherman Act, 15 U.S.C. S 1. The Tucor defendants entered into a plea agreement under which Tucor Industries pled guilty to the antitrust violations and the government dismissed the charges against Tucor International. Four years later, Tucor Industries filed a petition for a writ of error coram nobis seeking to set aside its guilty plea.[1] Tucor contended that, under the Shipping Act of 1984, 46 U.S.C. app. S 1706(a)(4), its activities were immune from antitrust liability because they occurred solely within the Philippines. The Luzon defendants moved to dismiss the indictment against them on the same grounds.
 
 
 5
 The district court held that the plain language of the Shipping Act exempted the activities of the Tucor defendants and the Luzon defendants. The court also found that the legislative history did not reveal a clearly expressed contrary intent. The district court thus concluded that the Tucor defendants were entitled to coram nobis relief. Moreover, because the indictment of the Luzon defendants alleged conduct that fell squarely within the statutory exemption, the court dismissed the indictment.
 
 DISCUSSION
 
 6
 We review de novo the district court's interpretation of a federal statute. Alexander v. Glickman, 139 F.3d 733, 735 (9th Cir. 1998). Where a statute is unambiguous, its plain meaning controls if it does not lead to absurd or impracticable consequences. Seattle-First Nat'l Bank v. Conaway, 98 F.3d 1195, 1197 (9th Cir. 1996).
 
 
 7
 Section 7(a)(4) of the Shipping Act of 1984 unambiguously exempts the activities of the Tucor and Luzon defendants from antitrust liability. The section provides:
 
 
 8
 The antitrust laws do not apply to . . . any agreement or activity concerning the foreign inland segment of through transportation that is part of transportation provided in a United States import or export trade . . . .
 
 
 9
 46 U.S.C. app. 1706(a)(4). The statute defines "through transportation" as "continuous transportation between origin and destination for which a through rate is assessed and which is offered or performed by one or more carriers, at least one of which is a common carrier, between a United States point or port and a foreign point or port." 46 U.S.C.S 1702(26). Although other carriers transported these shipments across the sea and within the United States, the defendants were engaged only in the foreign inland segment of the transportation.
 
 
 10
 The district court correctly rejected the government's argument that section 7 encompasses only the agreements and activities of ocean common carriers. The government bases this contention on its interpretation of section 4 of the Act. Section 4(a) states, "This chapter applies to agreements by or among ocean common carriers . . . ." Section 4(b) provides, "This chapter applies to agreements (to the extent the agreements involve ocean transportation in the foreign commerce of the United States) among marine terminal operators and among . . . one or more ocean common carriers . . . ." 46 U.S.C. app. S 1703(a), (b).
 
 
 11
 As held by the district court, the language of section 4 does not compel the conclusion that agreements among ocean common carriers or marine terminal operators are the only agreements within the scope of the Shipping Act's exemptions, and section 7(a)(4) is not limited to such agreements. In addition, although section 7(a)(2) applies the antitrust exemption to any activity or agreement within the scope of this chapter, section 7(a)(4) clearly applies to any agreement-without limitation--concerning the foreign inland segment of through transportation. The government's construction ignores the Act's plain language and cannot be interpreted consistently with the statute as a whole.
 
 
 12
 The government's argument that section 7 encompasses only the agreements and activities of ocean common carriers also cannot be reconciled with either our own caselaw defining the scope of the term "common carrier" or with the structure of section 7. In Transpacific Westbound Rate Agreement v. Federal Maritime Comm'n, 951 F.2d 950 (9th Cir. 1991), we held that the term "ocean common carrier" in the Shipping Act of 1984 was limited to carriers that provided transportation between the United States and a foreign port, not to wholly foreign transportation. Id. at 953. In that case, however, we also noted that section 7 provides antitrust immunity for filed and "foreign-foreign agreements." Id. at 952. Thus,by definition, section 7 could not encompass only "common carriers," meaning carriers that provide transportation between the United States and foreign ports. Nevertheless, the government argues that every exemption within section 7 of the Shipping Act applies only to agreements between ocean common carriers. However, such an argument makes little sense in light of the structure of section 7 and, in particular, the language of section 7(a)(3), which expressly exempts from antitrust liability certain agreements and activities that relate to transportation services "within or between foreign countries . . . ." 46 U.S.C. app. S 1706(a)(3).
 
 
 13
 The government also attempts to establish the inapplicability of section 7(a)(4) by arguing that the legislative history of the Shipping Act supports its interpretation. It contends, for example, that reports from committees, such as the House Judiciary Committee, establish that the language of section 4 was "intended . . . to indicate the scope of the Act for purposes of defining the breadth of the antitrust exemption set forth in Section 7 of the bill." H.R. Rep. No. 97-611, pt. 2, at 31 (1982). As the district court observed, however, the legislative history as a whole does not demonstrate a clearly expressed intent contrary to the plain language. See United States v. Neal, 976 F.2d 601, 602 (9th Cir. 1992). Besides, since the language of the statute is clear, we need look no further than the language itself to determine the statute's meaning. Seattle-First Nat'l Bank v. Conaway, 98 F.3d 1195, 1197 (9th Cir. 1996).
 
 
 14
 The government further argues that the indictments covered conduct broader than that implicated by the Shipping Act exemption. However, an examination of the indictment itself belies this position. It alleged:
 
 
 15
 During the period covered by this indictment, Department of Defense regulations required that, to be eligible to receive or deliver military shipments of household goods in the Philippines, a U.S. freight forwarder had to be represented by an agent in the Philippines. For outbound shipments to the United States, the agents accepted bookings on behalf of the U.S. freight forwarders they represented from U.S. military installations in the Philippines, packed the shipments, and transported the shipments by motor van to a port in the Philippines for transfer to an overseas carrier. For inbound shipments, the agents picked up the shipments at the port, transported the shipments by motor van to the final destination, and unloaded and unpacked the shipments.
 
 
 16
 Indictment at 6-7 (emphasis added). The district court properly rejected the government's argument that the conduct alleged in the indictment was not "through transportation" and that the statute could not have exempted all of the defendants' activities. The Shipping Act exempts precisely the conduct that the indictments sought to charge.
 
 
 17
 The district court correctly held that the Tucor defendants were entitled to coram nobis relief. Moreover, it also was correct in finding that the conduct alleged in the indictment of the Luzon defendants fell within the section 7 exemption. Thus, the court properly dismissed the indictment.
 
 
 18
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 A writ of error coram nobis "provides a remedy for those suffering from the `lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and`egregious legal errors.' " United States v. Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989) (quoting Yasui v. United States, 772 F.2d 1496, 1498, 1499 n.2 (9th Cir. 1985)).