98 F.3d 1195
 1997 A.M.C. 57, 96 Cal. Daily Op. Serv. 7918,
96 Daily Journal D.A.R. 13,156
 SEATTLE-FIRST NATIONAL BANK, Plaintiff-Appellant,
v.
Roger CONAWAY; Jared Kelley; Randy Stuart; Gregory
Haynes, Plaintiffs-Intervenors-Appellees.
ST. ELIAS OCEAN PRODUCTS, INC., Claimant,
v.
LADY LYNNE, Official No. 958807, her engines, machinery,
appurtenances, etc.; and, Day Fisheries, Inc., Defendants.
 No. 95-35757.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Oct. 10, 1996.*
Decided Oct. 30, 1996.
 
 John E. Casperson, Philip W. Sanford, Faulkner, Banfield, Doogan & Holmes, Seattle, Washington, for plaintiff-appellant.
 Charles W. Ray, Jr., Law Offices of Charles W. Ray, Jr., Anchorage, Alaska, for plaintiffs-intervenors-appellees.
 Appeal from the United States District Court for the District of Alaska, H. Russel Holland, Chief District Judge, Presiding. D.C. No. CV-92-00633-HRH.
 Before BROWNING, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 FERNANDEZ, Circuit Judge:
 
 
 1
 Seattle-First National Bank appeals the district court's grant of summary judgment in favor of intervenors Roger Conaway, Jared Kelley, Randy Stuart, and Gregory Haynes (collectively Conaway), in Seattle-First's action to foreclose a preferred marine mortgage on the Vessel Lady Lynne. Because Conaway asserted an in rem claim for seaman's wages, Seattle-First argued that the six-month statute of limitations barred Conaway's claims against the vessel. See 46 U.S.C. § 10602(a). The district court decided that the six-month statute of limitations did not apply to the oral agreements upon which Conaway based his claim and therefore granted summary judgment in his favor. We affirm.
 
 BACKGROUND
 
 2
 Seattle-First filed an action in personam and in rem in which it sought to foreclose its preferred marine mortgage on the Vessel Lady Lynne because of the default on a promissory note by Day Fisheries, Inc. The district court entered judgment by default in favor of Seattle-First and ordered sale of the Lady Lynne.
 
 
 3
 Conaway was employed aboard the Lady Lynne at various times from 1987 to 1991 solely on the basis of oral agreements; there were no written contracts of employment. On March 5, 1992, more than six months after the last sale of fish subject to his claims, Conaway filed a complaint for wages in personam and in rem against Day Fisheries and the Lady Lynne respectively. Upon learning of Seattle-First's later action to foreclose, Conaway moved to intervene, and the district court granted the motion.
 
 
 4
 Subsequently, Seattle-First moved for summary judgment against Conaway. It argued that the six-month statute of limitations in 46 U.S.C. § 10602(a) barred the claims. Conaway opposed the motion and filed a cross-motion for summary judgment on the wage claims. The district court denied Seattle-First's motion and granted Conaway's cross-motion. It held that the six-month statute of limitations did not apply because Conaway's claims were based on oral rather than written agreements. Seattle-First now appeals the district court's ruling.
 
 STANDARD OF REVIEW
 
 5
 We review a grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Our review "is governed by the same standard used by trial courts under Federal Rule of Civil Procedure 56(c)." Jesinger, 24 F.3d at 1130. We "must determine whether the evidence, viewed in a light most favorable to the nonmoving party, presents any genuine issues of material fact and whether the district court correctly applied the law." Warren, 58 F.3d at 441; Jesinger, 24 F.3d at 1130.
 
 DISCUSSION
 
 6
 A seaman's right to receive wages owed to him has traditionally received substantial legal protection, perhaps greater than the protection received by any other class of workers. 1 Martin J. Norris, The Law of Seamen § 12.1 (4th ed.1985). A seaman's right to a written contract of hire has a long history in American law. It originated in one of the first statutes enacted by Congress. See Kossick v. United Fruit Co., 365 U.S. 731, 734 n. 4, 81 S.Ct. 886, 889 n. 4, 6 L.Ed.2d 56 (1961). This requirement remains on the books today. See 46 U.S.C. § 10601. However, Congress has limited a seaman's right to assert an in rem claim for wages by enacting a six-month statute of limitations, which provides that "[w]hen fish [are] caught under an agreement under section 10601 of this title ... the vessel is liable in rem for the wages and shares of proceeds of the seamen. An action under this section must be brought within six months after the sale of the fish." 46 U.S.C. § 10602(a) (emphasis added).
 
 
 7
 Seattle-First rests its appeal on the second sentence of § 10602 which, if applicable, would bar Conaway's claims. However, the statute of limitations on its face only applies to agreements made under § 10601, which, in turn, provides, in pertinent part, that "[b]efore proceeding on a voyage, the master or individual in charge ... shall make an fishing agreement in writing with each seaman employed on board." See 46 U.S.C. § 10601(a) (emphasis added). The section goes on to prescribe the content of the written agreement and requires that it be signed by the owner of the vessel. 46 U.S.C. § 10601(b), (c). Conaway's claims would be barred only if, despite its language, the reach of § 10602 extended to contracts which are not described in § 10601-oral contracts.
 
 
 8
 We have never directly addressed the applicability of § 10602 to oral agreements; however, we did interpret part of the provision in Fuller v. Golden Age Fisheries, 14 F.3d 1405 (9th Cir.), cert. denied, 512 U.S. 1206, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994). In Fuller, we considered in rem claims for seaman's wages, which the plaintiff made on the basis of a written agreement. We rejected an argument that § 10602 creates a new remedy for seamen without altering existing remedies under general maritime law and held that § 10602 (including the statute of limitations) provides the exclusive remedy for seamen with written fishing agreements. Id. at 1407-08. We declined to express an opinion on the applicability of the six-month limitation to oral agreements. Id. at 1407.
 
 
 9
 We also recognize that in reference to § 10602 we recently stated: "The provision circumscribes the right of seamen to recover unpaid wages." Kesselring v. F/T Arctic Hero, 95 F.3d 23, 24 (9th Cir.1996) (per curiam). That statement, even if accepted as a part of our holding, does not decide the question of whether the six-month limitation period applies to oral fishing agreements. That is because the statute can circumscribe the rights of seamen who have written agreements without affecting the rights of those who have oral agreements, and nothing in Kesselring indicates whether the agreements in question were written or oral. In fact, Kesselring only decided whether the limitation period was jurisdictional and decided that it was not. Id. at 24. The language of Kesselring does not address the essential question raised in the case at bar, namely whether § 10602 is applicable to the claims of seamen who merely have oral agreements. Now, however, we must directly address that question.
 
 
 10
 As a matter of simple statutory construction §§ 10601 and 10602 are perfectly clear facially. The latter applies to agreements under the former, and the former says that those agreements must be in writing. When we are handed language of that clarity, our analysis can begin and end right there. "Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning." United States v. Lewis, 67 F.3d 225, 228 (9th Cir.1995) (citing Sullivan v. Stroop, 496 U.S. 478, 482, 110 S.Ct. 2499, 2502-03, 110 L.Ed.2d 438 (1990)); United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); see also United States v. Neville, 985 F.2d 992, 995 (9th Cir.), cert. denied, 508 U.S. 943, 113 S.Ct. 2425, 124 L.Ed.2d 646 (1993); Brock v. Writers Guild of America, West, Inc., 762 F.2d 1349, 1353 (9th Cir.1985); Church of Scientology of Calif. v. United States Dep't of Justice, 612 F.2d 417, 421 (9th Cir.1979). At least that is true where what seems to be the plain meaning of the statute does not lead to " 'absurd or impracticable consequences.' " Church of Scientology, 612 F.2d at 421 (quoting United States v. Missouri Pac. R.R., 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929)); see also Tovar v. United States Postal Serv., 3 F.3d 1271, 1274 (9th Cir.1993); Heppner v. Alyeska Pipeline Serv. Co., 665 F.2d 868, 872 (9th Cir.1981). Again, the meaning here is plain enough, and consideration of the whole statutory scheme reveals that it is not at all absurd or impracticable to limit the statute of limitations to written contracts.
 
 
 11
 Legislation in this area provides that a seaman employed in a manner "contrary to a law of the United States ... may leave the service of the vessel ... and ... recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher." 46 U.S.C. § 11107; see also 46 U.S.C. §§ 564, 576 (1982). Section 10601(a) requires that agreements with seamen be in writing; a master who hires a seaman on an oral contract violates that law. Therefore, the seaman is entitled to the remedies set forth in § 11107. The Alaska Supreme Court has correctly decided that § 11107 provides for a penalty against vessel owners who employ seamen without written agreements in violation of § 10601. Bjornsson v. U.S. Dominator, Inc., 863 P.2d 235, 238-40 (Alaska 1993). Thus, when considered together, §§ 10601 and 11107 establish that oral contracts with seamen on fishing vessels are "void" (as that term is used in § 11107).
 
 
 12
 This is not a new concept; it has a long historical pedigree. See Kossick, 365 U.S. at 734-35 n. 4, 81 S.Ct. at 889-90 n. 4. Therefore, analysis of the broader statutory context yields the conclusion that the six-month limitations period does not apply to oral agreements because Congress would not have established a statute of limitations for breaches of agreements which it has deemed "void." Moreover, it is unlikely that it would have sought to protect the vessels of owners who violate the writing requirement.
 
 
 13
 Seattle-First argues that we should depart from the text of the statute and instead rely on the principle that federal legislation touching an area of maritime law effects complete preemption of general maritime law in that area. Specifically, it argues that the enactment of § 10602 completely preempted the doctrine of general maritime law which permits a seaman to maintain an in rem action for wages. However, Seattle-First fails to provide published judicial authority or legislative history in support of that position. Rather, Seattle-First analogizes to cases involving actions under general maritime law, in which the Supreme Court and we have held that plaintiffs may not obtain certain types of nonpecuniary damages. Miles v. Apex Marine Corp., 498 U.S. 19, 30-34, 111 S.Ct. 317, 324-26, 112 L.Ed.2d 275 (1990); Glynn v. Roy Al Boat Mgt. Corp., 57 F.3d 1495, 1501-05 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 708, 133 L.Ed.2d 663 (1996); Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1407-08 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1314, 131 L.Ed.2d 196 (1995). In deciding those cases, the courts relied upon a declared legislative policy-established in the Death on the High Seas Act and the Jones Act-of limiting damages to pecuniary losses. Miles, 498 U.S. at 31-34, 111 S.Ct. at 325-26; Glynn, 57 F.3d at 1502-03; Chan, 39 F.3d at 1407-08. Seattle-First argues that those decisions support the proposition that § 10602 completely preempts a seaman's in rem action for wages under general maritime law. We do not see how. No overarching congressional policy appears here, unless it is the general policy of assuring the fair treatment of seamen by their employers.
 
 
 14
 Seattle-First then goes on to claim that the limitation period of § 10602 exists independently of both § 10601 and the reference to § 10601 contained in § 10602. To do so it must ignore § 10602's language. Again, Seattle-First presents no authority for its claim that we should ignore what Congress has said. It posits that Congress really intended to establish a general policy of fixing a six-month limitations period for all in rem wage claims of seamen. On the contrary, Congress showed no intention of speaking to time limitations on a seaman's in rem rights when the master of a vessel has failed to provide him with the written agreement required by law. Congress could easily have done so, had it wanted to, but it only spoke to the limitations period applicable when the employer has complied with the law by providing a proper written agreement. If anything, the express declaration that § 10602 "does not affect a common law right of a seaman to bring an action to recover the seaman's share of the fish or proceeds,"[1] indicates an intent on the part of Congress to proceed carefully and legislate narrowly in this area. The statute itself makes unambiguous reference to agreements under § 10601, and those must be in writing. In fine, there is nothing absurd or impracticable about enforcing the statute in accordance with its plain meaning.[2]
 
 CONCLUSION
 
 15
 Seattle-First provides no authority for its argument that the six-month limitation period in § 10602 should apply to oral agreements. The text of the statute, considered in the context of its historical development, controls the outcome of this case. Seamen traditionally have had both a right to written agreements and remedies for an employer's failure to provide those agreements. Congress has shown no intent to resile from that principle, and it has shown no intent to establish a uniform statute of limitations for all in rem wage claims.
 
 
 16
 This is a case where seamen have suffered two wrongs: first, they were not given the written agreement to which they were entitled, and second, they were not given their wages. We will not bend and amend the statute to take an in rem remedy away from these doubly wronged seamen. Nothing requires that obeisance to uniformity.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The Panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 42 U.S.C. § 10602(c)
 
 
 [2]
 This seems contrary to the usual policy of requiring that actions on oral contracts be brought sooner than those on written contracts. See, e.g., Wash. Rev.Code § 4.16.040(1) (written contract-6 years); Id. § 4.16.080(3) (oral contract-3 years). However, there is a more important policy in operation here-protection of seamen from the duress, coercion, or deception that might result if masters were permitted to ship them out to sea without first providing written articles. See 1 Norris, supra, § 6.4; United States v. City of Mexico, 25 Fed. Cas. 429, 432 (C.C.E.D.N.Y.1874) (No. 14,797)