**B.J. CARNEY INDUSTRIES INC., Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**No. 98–70315.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 12, 1999.

Decided Sept. 23, 1999.

Jeffrey L. Supinger (argued), Witherspoon, Kelley, Davenport & Toole, Spokane, Washington, for the petitioner.

Thomas H. Pacheco (argued), United States Department of Justice, San Francisco, California, for the respondent.

Before: WILLIAM C. CANBY, JR., MELVIN BRUNETTI and DIARMUID F. O'SCANNLAIN, Circuit Judges.

Opinion by Judge O'SCANNLAIN; Dissent by Judge CANBY.

O'SCANNLAIN, Circuit Judge:

We must decide whether the time to file an appeal of a class II civil penalty assessment under the Clean Water Act runs from the issuance of an Administrative

Law Judge's civil penalty order, or from the date that such an order becomes final.

## I

B.J. Carney Industries, Inc. ("Carney") operated a wood pole treating facility from 1982 to 1990, water from which eventually flowed into the city of Sandpoint, Idaho's publicly owned treatment works ("POTW"). Pursuant to its National Pollutant Discharge Elimination System ("NPDES") permit, Sandpoint was required to issue industrial waste acceptance ("IWA") forms to the industrial users of its POTW, like Carney.

In November 1985, the Environmental Protection Agency ("EPA") informed Carney in writing that its discharge to the Sandpoint POTW was "in violation of the pretreatment standards" because it contained pentachlorophenol ("PCP") and diesel grade oil. In that same letter, however, EPA indicated that, because "Sandpoint was delegated pretreatment program authority," EPA would defer to Sandpoint's enforcement of pretreatment standards. On January 9, 1987, Sandpoint issued Carney an IWA permitting the discharge of small amounts of PCP.

Carney, in turn, contacted EPA to challenge its November 1985 determination that Carney's discharge violated the applicable pretreatment standards and to assert that the IWA worked out between Sandpoint and Carney was "far more consistent with sound environmental policy." Several months later, on September 4, 1987, EPA responded by reasserting that Carney's discharge to the Sandpoint POTW was a violation of the "no discharge standard," despite the fact that Sandpoint had issued Carney an IWA permitting such discharge. While EPA made clear that it was dissatisfied with Sandpoint's enforcement actions because it believed that Carney was in violation of the "no discharge standard," EPA again deferred to Sandpoint's enforcement authority, stating that it would "be advising the city of these concerns." Despite various hearings

and correspondence on the matter with EPA and the city, Carney's IWA permitting discharge of PCP remained in force until May 29, 1990.

Sandpoint subsequently issued Carney a new IWA permitting no discharge of PCP. Soon thereafter, on July 16, 1990, Carney shut down its plant and voluntarily spent hundreds of thousands of dollars to clean up the site. Roughly two months later, apparently ignorant of the fact that Carney had shut down its plant and thus ceased discharging any PCP, EPA filed an administrative complaint against Carney. EPA later amended the complaint to reflect the closing of the facility, but sought a civil penalty assessment for the previous years of noncompliance anyway.

After extensive proceedings and a hearing, the ALJ found Carney in violation of the pretreatment standards and assessed a gravity-based penalty of $9,000, but refused to allow EPA to recover Carney's economic benefit from its violations. The ALJ indicated that such a small penalty was warranted because it appeared that Carney's "actions with regard to the PCP discharge were taken in good faith, particularly in light of the differing regulatory approaches taken by Sandpoint and EPA, and there [was] nothing in the record to establish that Carney was intentionally dilatory in addressing the problem." Both parties appealed to the Environmental Appeals Board ("EAB"), which affirmed the finding of liability and the assessment of a gravity-based penalty, but rejected Carney's equitable estoppel defense and remanded solely for (1) determination of how much economic benefit Carney received during the limitations period and (2) recalculation of the penalty accordingly. On remand, a different ALJ determined that the economic benefit penalty coupled with the gravity-based penalty exceeded the statutory maximum penalty of $125,000, and thus assessed a $125,000 civil penalty.

The ALJ's civil penalty order was entered on January 5, 1998; Carney filed

this appeal seventy days later on March 16, 1998, challenging the amount of the penalty and reasserting its estoppel defense. The government subsequently moved for dismissal of the appeal as untimely.

## II

■ The Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), provides that a civil penalty assessment may be appealed to a federal court of appeals "by filing a notice of appeal in such court within the 30–day period beginning on the date the civil penalty order is *issued.*" 33 U.S.C. § 1319(g)(8) (emphasis added). The CWA further provides that "[a]n order issued under [§ 1319(g)] shall become final 30 days after its *issuance* unless a petition for judicial review is filed under [§ 1319(g)(8)]." *Id.* § 1319(g)(5) (emphasis added). Once an order becomes final (i.e., thirty days after issuance), the Attorney General may bring a civil action to collect. *See id.* § 1319(g)(9).

There is no dispute that ALJ issued the order assessing the penalty on January 5, 1998 and that Carney did not file an appeal until March 16, 1998, more than thirty days thereafter. The government asserts that we have no authority to hear this appeal because statutory time limits on the appeal of agency actions are jurisdictional in nature. *Cf. Felt v. Director, Office of Workers' Compensation Programs,* 11 F.3d 951, 952 (9th Cir.1993).[1] As the government points out, the statutory provisions in question plainly distinguish between the issuance of a civil penalty order and its finality, and further make plain that the time to appeal commences upon the issuance, rather than the finality, of such an order assessing a penalty.

Carney responds by asserting that the ALJ's order was merely an "initial decision" which became an appealable order issued by the EAB only after forty-five days elapsed following its issuance by the

ALJ. *See* 40 C.F.R. § 22.27(c) (providing that a presiding officer's initial decision shall become final forty-five days after service unless an appeal is taken to the EAB or the EAB elects to review sua sponte). Carney asserts that the CWA empowers only "the Administrator" of EPA to assess penalties, *see generally* 33 U.S.C. § 1319, and that the Administrator has delegated this authority to the EAB, rather than to ALJs. Put most simply, Carney asserts that ALJs lack the authority to issue a civil penalty order within the meaning of 33 U.S.C. § 1319.

As the government points out, however, the Administrator has delegated to the presiding officers in each region (like the ALJ here) the authority to "issue all necessary orders" and "do all other acts . . . necessary for the efficient, fair and impartial adjudication of issues." 40 C.F.R. § 22.04(c). Moreover, ALJs have been expressly empowered to issue an initial decision with a recommended civil penalty assessment, *see id.* § 22.27(a)-(b), which is presumably "initial" and "recommended" merely because review may be sought with the EAB or the EAB may choose to review the decision sua sponte, *see* 40 C.F.R. § 22.27(c). Further, the CWA itself in no way indicates that an ALJ's order assessing a civil penalty is not "a civil penalty order" from which appeal must be taken within thirty days of issuance. *See* 33 U.S.C. § 1319(g)(8). Indeed, the ALJ's order here plainly stated that ".B.J. Carney IS ASSESSED a civil penalty of $125,000 for violations of the Clean Water Act" (emphasis in the original).

■ Despite the clear distinction in the statutory language between the issuance and finality of a civil penalty order, Carney asserts that permitting appeal upon issuance, before an order has become final and the agency has completed its review, makes little sense. *See* 40 C.F.R. § 22.27(c) (providing forty-five days within which the EAB may elect to review sua

---

**1.** Carney does not dispute that the statutory    time limit is jurisdictional in nature.

sponte a presiding officer's initial decision before it becomes final). Congress, however, may well have wished to create such an opportunity for parties to bypass the agency process and seek immediate review by a federal court of appeals; EPA's confused and dilatory actions in this case amply demonstrate the wisdom of prompt judicial review.[2] In any case, we have no authority to override the policy decisions made by Congress; where statutory language is clear, our inquiry is at an end. *See, e.g., Seattle–First Nat'l Bank v. Conaway*, 98 F.3d 1195, 1197 (9th Cir.1996).

### III

Carney's appeal is untimely because it was filed more than thirty days after the issuance of the Administrative Law Judge's order assessing a civil penalty. As such, and regrettably, we do not have jurisdiction to hear it.

DISMISSED.

CANBY, Circuit Judge, dissenting:

With all due respect to the majority, I do not believe that Congress intended to establish such a startling system of appellate review of civil penalty assessment orders. Under the majority's view of 33 U.S.C. § 1319(g)(8), an initial decision of a hearing officer must be appealed to a court of appeals within 30 days of its issuance. Yet the same initial decision may be reviewed and modified by the Environmental Appeals Board on its own motion within 45 days after it is served upon the parties! 40 C.F.R. § 22.30(b).[1] This construction of the statute leaves us with a virtually unprecedented system of judicial review of

unfinished administrative business. As Carney points out, a violator who is subject to a $25,000 penalty might forego an appeal to the court of appeals, only to find that, after the 30 day appeal time to that court has run, the Environmental Appeals Board reviews the decision and quadruples the penalty.

In my view, the language of the § 1319(g)(8) does not compel this result. It provides that a person against whom a penalty is assessed may appeal to a court of appeals "by filing a notice of appeal in such court within the 30–day period beginning on the date the *civil penalty order is issued.*" *Id.* (emphasis added). Nothing in the Act requires us to construe the Administrative Law Judge's initial decision as a "civil penalty order" as soon as it is handed down. The majority is quite correct in saying that the Administrator has delegated to administrative law judges the authority to "issue all necessary orders," 40 C.F.R. § 22.04, but that delegation does not compel us to view the Administrative Law Judge's initial decision as a matured "civil penalty order." Indeed, there is considerable indication in the regulations that the EPA itself does not so regard it.

The governing regulation states that the presiding officer shall issue "his *initial* decision" containing findings of fact, conclusions of law, and "a *recommended* civil penalty assessment." 40 C.F.R. § 22.27(a) (emphasis added). This language is wholly unsuited for describing a "civil penalty order" ready for judicial review. Indeed, the regulations contain the usual administrative provision that:

The initial decision of the Presiding Office shall become the final order of the

**2.** Indeed, the record discloses that EPA was largely responsible for Carney's noncompliance with the CWA. EPA's letters to Carney plainly indicated that, while the agency believed Carney's PCP discharges to be noncompliant, the matter would be left to the city of Sandpoint's enforcement authority. Reasonably relying upon these representations, Carney had little reason to cease such discharges when they were *expressly permitted* by the IWA issued by Sandpoint. Carney's good faith in these matters is demonstrated by the

fact that, upon revocation some three years later of the IWA permitting PCP discharge and the issuance of a no-PCP discharge IWA, Carney immediately ceased the offending discharges, shut down its plant, and voluntarily cleaned up the site at great expense.

**1.** The initial decision may also be appealed to the Board by the parties, within 20 days after service upon them of the initial decision. 40 C.F.R. § 22.30(a)(1).

Environmental Appeals Board within forty-five (45) days after its service upon the parties and without further proceedings unless (1) an appeal to the Environmental Appeals Board is taken from it by a party to the proceedings, or (2) the Environmental Appeals Board elects, sua sponte, to review the initial decision. 40 C.F.R. § 22.27(c). Why should we not assume that Congress intended us to follow the normal administrative review practice and view such a *final* order as the one assessing a penalty, appealable to this court under § 1319(g)(8) within 30 days after it "issues," i.e., after it becomes the final order of the Board?

The regulations governing appeals to the Board buttress the view that the ALJ's initial decision is not the final decision of the Agency. The initial decision may be appealed to the Environmental Appeals Board within 20 days (or may be reviewed by the Board *sua sponte* within 45 days), and parties in their notice of appeal must set forth alternative findings and conclusions and a "proposed order together with relevant references to the record and the initial decision." 40 C.F.R. § 22.30(a). The Board is then required to "issue a *final order* as soon as practicable." 40 C.F.R. § 22.31(a) (emphasis added).

Certainly the statute and the regulations together permit (I might say "compel") an interpretation that a "civil penalty order" is "issued" within the meaning of § 1319(g)(8) when the Environmental Appeals Board has issued a final order or when the time for its review has run. The majority is apparently of the view that such a construction is inconsistent with § 1319(g)(5), which states that "[a]n order issued under [§ 1319(g)(8)] shall become final 30 days after its issuance unless a petition for review is filed" with the court of appeals or a rehearing is requested. But the question in dispute is when a "civil penalty order" is actually "issued" under § 1319(g)(8). If it is not issued until the Board finishes its review or the time for such review has run, then § 1319(g)(5) merely provides that the order becomes

"final" for collection purposes 30 days later. We should not let the tyranny of the words "final" or "issue" lead us to a nonsensical result. There is no inconsistency in holding that an Administrative Law Judge's decision becomes the decision of the Administrator only after administrative review or after time for such review has run (and thus becomes "final" and "issues" for purposes of judicial review), and that the order becomes "final" for purposes of collection 30 days later under § 1319(g)(5).

If there is any strain in so interpreting the language of subsection (g)(5), I would endure it in order to reach a result that will avoid judicial and administrative disorder in the review process, leaving us with an unprecedented system of judicial review while the administrative process is still in an interlocutory stage. Congress could not have intended that result. Perhaps the difference in my approach to § 1319 and that of the majority is found in my disagreement with the majority's statement that "where statutory language is clear, our inquiry is at an end." We and other courts often utter unconditional statements like this about the plain meaning rule, but are unable to live with them in practice. Some qualifications have to be acknowledged. *See, e.g., Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) ("Absent a clearly expressed legislative intention to the contrary, [the statutory] language must ordinarily be regarded as conclusive."). Indeed, *Seattle–First Nat'l Bank v. Conaway,* 98 F.3d 1195, 1197 (9th Cir. 1996), cited by the majority in support of its unconditional statement, adds an important qualification: "At least that is true where what seems to be the plain meaning of the statute does not lead to 'absurd or impracticable consequences.'" *Id.* at 1197 (citations omitted). In this case, a rigid "plain meaning" of the words "final" and "issued" in § 1913(g)(5) has led to absurd or impractical consequences. Congress cannot have intended the result the majority attributes to it.

The majority states that the wisdom of immediate judicial review of a non-final administrative decision is demonstrated by "EPA's confused and dilatory actions in this case." But if the initial decision of the ALJ was wrong, a point that I do not reach, there is every reason to give the Agency itself a chance to correct it by administrative review, as we normally do before inserting the courts into the process.[2]

Because I believe that §§ 1319(g)(8) may properly be construed to require the filing of a notice of appeal within 30 days after an ALJ's decision becomes the decision of the Board, and that the majority's contrary interpretation creates a chaotic system of judicial review that cannot have been intended by Congress, I dissent. I would hold Carney's appeal to be timely and would address its merits.

---

**2.** I cannot endorse the majority's statement in its footnote 2 that "EPA was largely responsible for Carney's noncompliance with the CWA." EPA did not cause the discharge of pollutants. Although it did give confusing signals concerning enforcement, EPA made its position clear in many communications to Carney that Carney's discharges were violations of the Act. These communications are fully described in the Environmental Appeals Board's Remand Order of June 9, 1997, pp. 8–13.