**TCW SPECIAL CREDITS, INC., Plaintiff,**

**v.**

**F/V KASSANDRA Z, OFFICIAL NO. 6553390,**
**Her Engines, Nets, Furniture, Etc., Defendant in Rem**
**and**
**KASSANDRA Z FISHING CO., INC., Defendant in Personam.**

**AND RELATED CLAIMS-IN-INTERVENTION**

High Court of American Samoa
Trial Division

CA No. 92-96

August 21, 2000

Before KRUSE, Chief Justice, TUAOLO, Chief Associate Judge, ATIULAGI, Associate Judge.

Counsel: For Plaintiff TCW, Craig Miller and Barry I. Rose
For Plaintiffs-in-Intervention Michael Datin, et al., William Banning and William H. Reardon

### ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OR NEW TRIAL AND GRANTING MOTION FOR STAY OF EXECUTION OF JUDGMENT PENDING APPEAL

### Procedural History

TCW filed numerous pleadings following the issuance of our Order on Cross Motions of May 1, 2000, including the following three documents filed on May 9, 2000: 1) Motion for New Trial and Reconsideration; 2) Motion for Determination of Supersedeas on Appeal and Temporary Stay of Judgment; and 3) Notice of Appeal.

TCW also filed a Memorandum Regarding Calculation of Crew Awards for Immediate Disbursement on May 18, 2000. We ordered partial disbursement of funds to the Crew on May 23, 2000. TCW then filed a

Supplemental Brief in Support of Motion for New Trial and for Reconsideration on May 24, 2000, bringing to our attention a recent case from the Fifth Circuit Court of Appeals.

Pursuant to counsels' Stipulated Motion to Continue Hearings of June 1, 2000, we continued the hearing on the above motions to June 23, 2000. Prior to the hearing, the Crew filed an Opposition to TCW's Motion for Reconsideration or New Trial on June 20, 2000, and an Opposition to TCW's Motion for Determination of Supersedeas on Appeal and Temporary Stay of Judgment on June 21, 2000.

The hearing on the motions before us was held on June 23, 2000, with all counsel present.

## Facts

The facts of the case are amply developed in our Opinion and Order of October 20, 1999. Any factual issues requiring further development for purposes of resolving the present motions will be treated in the appropriate sections that follow.

## Analysis

A. Motion for Stay of Judgment in Absence of Supersedeas Bond

In our Order on Cross Motions of May 1, 2000, we denied TCW a stay of execution of judgment in the absence of a supersedeas bond because its motion provided no justification whatsoever for waiving the bond requirement. TCW has since presented ample reasons for granting the stay in the absence of a supersedeas bond, and we will accordingly grant the stay.

■ Under Federal Rule of Civil Procedure 62(d), a party appealing a money judgment is entitled to a stay of that judgment as a matter of right upon posting of a supersedeas bond. *See Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*, 87 S.Ct. 1, 3 (1966). However, under the laws of American Samoa, a stay upon posting of a supersedeas bond is not a matter of right, but is rather "[s]ubject to the discretion of the court . . . ." T.C.R.C.P. 62(d). The court should grant a stay "only 'for cause shown.'" *Asifoa v. Lualemana*, 17 A.S.R. 2d 10, 12 (App. Div. 1990) (quoting A.S.C.A. § 43.0803).

■ We concluded in our earlier order that TCW had shown adequate cause to attempt a stay, but we will reiterate our reasons here. First, the law is definitely not settled as to the award of statutory wages to the crew, which constitutes the bulk of the sum to be disputed upon appeal. Second, TCW probably would find it next to impossible to recover sums

paid to individual fishermen, the majority of which are not U.S. nationals. Third, the crewmembers, by virtue of our Order for Partial Disbursement, dated May 23, 2000, have at this point received the majority of wages they actually earned under oral fishing contracts.

■ A supersedeas bond is "required of one who petitions to set aside a judgment or execution and from which the other party may be made whole if the action is unsuccessful." BLACK'S LAW DICTIONARY 1438 (6th ed. 1991). Such a bond is normally required by a debtor moving for a stay of execution of judgment under T.C.R.C.P. 62(d). The purpose of such a bond is twofold. First, it guarantees that appellant will be able to pay the judgment if it loses the appeal. Second, it compensates a party for the loss of use of its money during the period of time between entry of the judgment and resolution of appeal. *Preston v. Thompson*, 565 F. Supp. 310, 317 (N.D. Ill. 1983).

■ We possess the discretion to substitute other types of judgment guarantees for supersedeas bonds under T.C.R.C.P. 62(d). If a judgment debtor demonstrates the present ability to pay the judgment and presents to the court a plan whereby this ability is guaranteed, the court may substitute this plan for a bond. *Intel Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985) (citing *Poplar Grove Planting and Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979) (substitute security permissible where debtors present financially secure plan).

The burden rests on the party seeking a departure from the usual supersedeas bond requirement to demonstrate reasons why the court should not require a bond. *Poplar Grove*, 600 F.2d at 1191. TCW utterly failed to do so in its previous motion, but has corrected that omission here. We believe TCW's plan would amply protect the Crew's interests in the judgment. Placing the disputed amount in a separate account that will be uncontested by TCW if it loses the appeal guarantees that TCW will be able to pay the judgment if it loses the appeal. The interest earned on this account will compensate the Crew for being deprived of its award during the period of time between entry of the judgment and resolution of appeal.

However, the Crew argues that, having already denied the requested stay, we should not now grant it in the absence of a change in law or fact. The Crew would be correct but for the posture of the case. First, TCW's notice of appeal does not remove the enforcement of the judgment and a request for a stay of the same from our jurisdiction. *In re Miranne*, 852 F.2d 805, 806 (5th Cir. 1988).

Second, TCW's first motion does not preclude us from considering the second now before us. In general, a party whose request for a stay is

denied at the trial level must appeal this denial to the Appellate Court. A.C.R. 8(a). However, our Order of May 1, 2000 entered a new judgment in favor of the Crew, thus providing TCW with an opportunity to seek a stay of its execution.

As stated earlier, we possess the discretion to allow TCW to substitute a judgment guarantee in place of a supersedeas bond. *Int'l Telemeter Corp.*, 754 F.2d at 1495. We will exercise this discretion to stay the execution of judgment pending appeal and preserve the Crew's right to its judgment by utilizing the plan devised by TCW.

B. The Crew's Procedural Challenges to TCW's Motion for Reconsideration

The Crew asserts in its Opposition to TCW's New Motion for Reconsideration or New Trial that we should not consider its merits. Responding to the Crew's first argument, we retain jurisdiction over the pending motion. TCW filed its Motion for Reconsideration within the mandatory 10 days following our Order on Cross Motions of May 1, 2000. TCW was wise to protect its right to appeal by filing both a notice of appeal and motion for reconsideration or new trial, because the latter is a prerequisite for the former. A.S.C.A. § 43.0802(a); *Taulaga v. Patea*, 17 A.S.R.2d 34, 35 (App. Div. 1990). However, TCW's filing of its Motion for Reconsideration or New Trial tolled the time for appeal, meaning that the notice of appeal filed concurrently is void. *Tinsley v. Borg*, 895 F.2d 520, 523 (9th Cir. 1990). Thus, the Motion for Reconsideration remains within our jurisdiction, and TCW has 10 days to file a notice of appeal following the issuance of this order. A.C.R. 4(a)(1).

■ Reconsideration is appropriate if the trial court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Under this standard, TCW is clearly entitled to move for reconsideration. First, the recent Fifth Circuit case cited by TCW is relevant to the issue of the Crew's recovery of statutory wages *in rem*, and thus provides a basis, under the "intervening change in controlling law" prong, for moving to reconsider the judgment at this point in time. *Id.* Second, TCW spends much of its motion addressing what it perceives as the inequities of our Order of May 1, 2000. In protesting its innocence, and the innocence of other similarly situated mortgage holders, TCW appears to argue that our Order of May 1, 2000 is manifestly unjust, providing another grounds for a valid motion for reconsideration or new trial. *Id.*

## C. Merits of the Motion for Reconsideration

The parties agreed at trial that the members of the Crew were never given written fishing agreements, constituting violations of 46 U.S.C. § 10601 (2000). In addition, TCW conceded that the terms of 46 U.S.C. § 11107 (2000) therefore established the Crew's proper remedy. The issue before us was the precise nature of this remedy. In our Opinion and Order of October 20, 1999, we concluded that § 11107 did not provide statutory wages in situations where crewmembers were paid agreed wages in the absence of written fishing agreements. On reconsideration, we examined § 11107 and relevant case law[1] more closely and reached the opposite conclusion in our Order of May 1, 2000.

We altered our first judgment on the basis that we had made a clear error of law, and remain convinced that this was the proper decision. In scrutinizing § 11107 more closely, we attempted to discern the intent of Congress regarding statutory wage recoveries for trips in which wages were paid on oral agreements. We believe that our interpretation, awarding statutory wages in such situations, does not constitute a clear error of law giving rise to reconsideration or new trial.

In general, a seaman's wage claim gives rise to a maritime lien having priority over a preferred ship mortgage lien. *See, e.g., United States v. ZP Chandon*, 889 F.2d 233, 237 (9th Cir. 1989). TCW, however, contends that the Crew may assert a maritime lien only for wages constituting "compensation for services actually rendered to the ship." The statutes governing this case, components of the Commercial Fishing Industry Vessel Safety Act of 1988, indicate otherwise. 46 U.S.C. § 10601 requires written fishing agreements, and § 11107 provides the measure of recovery for violation of this requirement, stating that the Crew's wages shall be "the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher." These statutory wages create a maritime lien against a vessel. *Seattle-First Nat. Bank v. Conaway*, 98 F.3d 1195, 1198 (9th Cir. 1996). Therefore, we begin with the presumption that the full wage award under § 11107 is recoverable *in rem*.

The Ninth Circuit case cited by TCW does not alter this presumption. In fact, it argues against TCW's position. In that case, the court held that retirement contributions did not constitute wages recoverable by way of

---

[1] *See TCW Special Credits v. Chloe Z Fishing Co.*, 129 F.3d 1330, 1333 (9th Cir. 1997); *Seattle-First Nat'l Bank v. Conaway*, 98 F.3d 1195, 1198 (9th Cir. 1996); *Bjornsson v. U.S. Dominator, Inc.*, 863 P.2d 235, 238-40 (Alaska 1993).

a maritime lien because the sailors had no present entitlement to those contributions. *Prudential Ins. v. United States Lines, Inc.*, 915 F.2d 411, 413-14 (9th Cir. 1990). Here, the Crew is presently entitled to statutory wages awarded under § 11107. Thus, the holding of the *Prudential* court indicates that the statutory wage award in this case is entitled to maritime lien status.

TCW next states that "[c]ourts have routinely divided single statutory wage claims into portions recoverable *in rem* and portions that must be pursued *in personam*," but the cases it cites do not support this proposition. The cited Ninth Circuit decision concerns efforts by a seafood company to recover monies and supplies it advanced to a fishing company by seeking a maritime lien against the company's ship. *See Int'l Seafood of Alaska v. Park Ventures, Inc.*, 829 F.2d 751 (9th Cir. 1987). This case thus dealt with a situation and statute entirely different from those in the present case and did not divide single statutory wages as claimed by TCW. The holdings of the other cases are similarly inapplicable. *See generally S.C. State Ports Auth. v. M/V Tyson Lykes*, 837 F. Supp. 1357 (D.S.C. 1993) (maritime lien asserted by port authority allowed for harbor master and labor charges with no examination of elements of this wage claim); *Atl. and Gulf Stevedores, Inc. v. M.V. Rosa Roth*, 587 F. Supp. 1033 (S.D.N.Y. 1984) (disallowing maritime lien for overtime pay only because plaintiff offered no reason why ship could not have been unloaded without resorting to overtime, as was requested by party shipping cargo). We remain thoroughly unconvinced that we should attempt to distinguish compensatory and penalty elements in the Crew's wage recovery.

Furthermore, we question the applicability of the recent Fifth Circuit decision cited by TCW. Although the court engaged in a long discussion concerning the priority of wage recoveries and maritime liens, its decision turned on the plain language of the penalty wage statute at issue. The statute, 46 U.S.C. § 10313(g) (2000), imposed liability for penalty wages only on the ship's master or owner. The court held that to enforce the penalty wage lien in question against persons other than the master or owner of the vessel "would be to act contrary to the plain language of the statute." *The Governor and Co. of the Bank of Scotland v. Sabay*, 2000 WL 524411, at *12 (5th Cir. 2000). It further stated that "[h]ad Congress desired to allow enforcement of penalty wages liens against vessel sale proceeds, when neither the owner nor the master has an interest in those proceeds, it easily could have said so." *Id.* (citing *Humana, Inc. v. Forsyth*, 525 U.S. 299, 309 (1999)).

There is no comparable language in § 11107 denying the recovery of its statutory wage awards against parties other than the master or owner of the vessel. Had Congress wished to incorporate such a limitation into § 11107, it could easily have done so. We can and will not read an

implication into a statute that it does not warrant. *United States v. Merriam*, 263 U.S. 179, 187-88 (1923). Nothing in the text of § 11107 warrants the limitation found in § 10313 and espoused by TCW. We therefore disagree that the holding of *Sabay* should govern the result in the present case.

TCW makes a number of policy arguments asserting that our decision may prove unfair to innocent parties (including ship mortgage holders, naturally) and to fishing operations that operated in the past without the required written fishing agreements. We appreciate the hardships our decision may cause to these parties, but this cannot control our decision. As discussed above, we based our decision on our best interpretation of Congress's intent in enacting the controlling statutes. If these statutes have unintended and inequitable consequences, that is for Congress to remedy.

In conclusion, TCW's arguments do not establish a manifest error of law justifying reconsideration or new trial.

### Order

For the foregoing reasons, TCW's motion for reconsideration or new trial is denied. Its motion for stay of execution of judgment pending appeal is granted and TCW has 10 days to file a notice of appeal following the issuance of this order. A.C.R. 4(a)(1).

It is so ordered.